2012 OK 114

**In re the Marriage of Mary Elias SMITH, Petitioner/Appellee,**

v.

**Morey J. VILLAREAL, Respondent/Appellant.**

No. 108,829.

Supreme Court of Oklahoma.

Dec. 18, 2012.

Rehearing Denied March 4, 2013.

William G. LaSorsa, Sara C. Smith, Tulsa, Oklahoma, for Petitioner/Appellee.

Joseph R. Farris, Curtis R. Roberts, Tulsa, Oklahoma, for Respondent/Appellant.

KAUGER, J.:

¶ 1 The dispositive issue presented is whether two properties purchased by husband using his separate funds for the benefit of his two daughters from a previous marriage were properly included within the marital estate by the trial court. Because husband provided clear and convincing evidence that it was not his intent that the rental properties be included in the marital estate, or even that the property be acquired in joint tenancy in the first place, husband successfully rebutted the presumption that a gift is assumed when real property purchased with the separate property of one spouse is acquired in joint tenancy by both spouses. The decision of the trial court that the two rental properties constituted part of the marital estate was against the clear weight of the evidence. The trial court's disposition of the remainder of the marital estate and the inclusion of the third marital home is affirmed.

## FACTS

¶ 2 Morey J. Villareal (husband) appeals a decision of the Court of Civil Appeals affirming the trial court's September 21, 2010, decree of divorce which divided the marital estate between himself and Mary E. Smith (wife). They were married on November 22, 2003. The parties filed for divorce on January 4, 2007, although they did attempt reconciliation for a time after filing. Wife moved out of the parties' home on January 8, 2008, and the parties resumed divorce proceedings in the trial court. They had no children together.

¶ 3 During the marriage, the parties lived in three successive homes. The first home

was purchased before the marriage using a combination of a mortgage, as well as proceeds from the sale of husband's previous separate home and money from his personal investment account. Twice during the marriage, the couple "traded up," purchasing new homes in part with funds from the sale of the previous home, combined with new mortgages. Husband made mortgage payments on the homes and improvements on them using earnings from his business which were held in his personal trust.

¶ 4 After the initial start of divorce proceedings, but during the period of attempted reconciliation, husband purchased two homes for his daughters from a prior marriage in June and October of 2007. The husband paid for these homes with his separate property, consisting of the proceeds from the sale of his parents' home. Wife does not dispute that the properties were purchased with husband's separate funds. However, both husband's and wife's names appear on the warranty deeds, signed by the sellers of the properties and notarized. Pursuant to the deed, husband and wife took title to the properties as joint tenants.

¶ 5 The divorce decree, entered on July 19, 2010, found the parties' third home, and the two homes purchased for the benefit of husband's two daughters by a previous marriage, to be included within the divisible marital estate.[1] Husband appealed the ruling of the district court that the marital homes and two rental properties were part of the marital estate, and the Court of Civil Appeals affirmed the decision on August 28, 2012. Husband filed his Petition for Certiorari with this Court on September 17, 2012.

## I. CLEAR AND CONVINCING EVIDENCE EXISTS THAT HUSBAND DID NOT INTEND A GIFT TO THE MARITAL ESTATE WHEN HE PURCHASED TWO PROPERTIES WITH HIS SEPARATE FUNDS FOR THE BENEFIT OF HIS DAUGHTERS, EVEN THOUGH HUSBAND AND WIFE TOOK TITLE AS JOINT TENANTS.

¶ 6 The trial court erred in holding that because husband and wife took title to the two rental properties as joint tenants, the properties automatically became part of the divisible marital estate. Clear and convincing evidence exists that indicates husband did not intend the two rental properties to become marital property. Despite husband and wife taking title as joint tenants, he rebutted the presumption of a gift that arises when spouses take title as joint tenants to property acquired with separate funds or originally held separately. The ruling of the trial court regarding the two rental properties was against the clear weight of the evidence indicating that husband did not intend a gift to the marital estate.

¶ 7 A divorce suit is one of equitable cognizance in which the trial court has discretionary power to divide the marital es-

---

1. The trial court made the following ruling concerning the two rental properties, which were currently being leased by the husband's daughters:

   The other issue is this—the two rental properties, and the Court struggles with this issue. And it's during the reconciliation period, not—it's after filing of divorce. It was made in joint tenancy and the respondent signed these documents and which [sic] puts them in joint tenancy. They—it's a mistake, whatever, but it's still a business document that the four corners say that petitioner and respondent were going to own these properties in joint tenancy.
   And I don't feel that Mr.—the Guaranty president comes and says we made that mistake. Well, that's going to be a contract issue. I have to go by what the—I mean, whether it is or not, I have to go by what he signed and what—yeah, I closed on some houses and I'm not sure I read everything that I sign when I do a mortgage, but it would also be to my detriment that I sign those and don't carefully read them. And he signed those things.
   I don't see how we can get around—these were during the reconciliation period. They were made in joint tenancy, and I'm going to find that they were—I'm going to find that they were just as the Rockford all the other homes that were in his—were just in his name other than—well, this one was joint tenancy. The one that was made in joint tenancy for 10 minutes and got put into the revocable trust, the Court has no problem with that because the revocable trust was for the benefit of both parties based on that they had. So I'm going to include the two rental properties as joint industry.
   Transcript of the Trial Court's Ruling of July 19, 2010, at p. 12.

tate.[2] In an action of equitable cognizance there is a presumption in favor of the trial court's findings and they will not be set aside unless the trial court abused its discretion or the finding is against the clear weight of the evidence.[3]

¶8 Title 43 O.S.Supp. 2006 § 121 requires a fair and equitable division of property acquired during the marriage by the joint industry of a husband and wife.[4] Jointly-acquired property is that which is accumulated by the joint industry of the spouses during the marriage.[5] The determination of the issue as to separate ownership of property acquired during the marriage is dependent on the original source of the property.[6] Wife does not dispute that the two rental properties were purchased with separate property of the husband.

¶9 A transfer by one spouse of separate property to another does not by itself erase the separate character of the asset or real property transferred; rather,

the original ownership regime must be respected unless there is proof of an interspousal gift.[7] The law provides a rebuttable presumption of a gift where title to separately held real estate is placed by one owner-spouse in both spouses' names as joint tenants.[8] This presumption arises even if the property in question was purchased with one spouse's separate funds, as in this case.[9]

¶10 The presumption in favor of a gift can be overcome by clear and convincing evidence of contrary intent, including evidence of a purpose for placing the property in joint tenancy that is collateral to making a gift.[10] In *Larman v. Larman*, 1999 OK 83, 991 P.2d 536, the Court held that the presumption of a gift was overcome where the wife included the husband's name upon deeds as a joint tenant to property she held separately for the sole purpose of refinancing the mortgage loans on both properties, because the lender required that in order to qualify, both spouses had to be record owners and sign the loan related documents.[11] In *Lar-*

2. *Jackson v. Jackson*, 1999 OK 99, ¶7, 995 P.2d 1109; *Larman v. Larman*, 1999 OK 83, ¶17, 991 P.2d 536; *Teel v. Teel*, 1988 OK 151, ¶7, 766 P.2d 994, 998.

3. *Francis v. Rogers*, 2001 OK 111, ¶24 n. 22, 40 P.3d 481; *Groseclose v. City of Tulsa*, 1998 OK 112, ¶18, 990 P.2d 828; *Krosmico v. Pettit*, 1998 OK 90, ¶23, 968 P.2d 345.

4. Title 43 O.S.Supp. 2006 § 121(B), in effect at the time divorce proceedings were initiated, provides:

> B. The court shall enter its decree confirming in each spouse the property owned by him or her before marriage and the undisposed-of property acquired after marriage by him or her in his or her own right. Either spouse may be allowed such alimony out of real and personal property of the other as the court shall think reasonable, having due regard to the value of such property at the time of the divorce. Alimony may be allowed from real or personal property, or both, or in the form of money judgment, payable either in gross or in installments, as the court may deem just and equitable. As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall, subject to a valid antenuptial contract in writing, make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be

> paid such sum as may be just and proper to effect a fair and just division thereof. The court may set apart a portion of the separate estate of a spouse to the other spouse for the support of the children of the marriage where custody resides with that spouse.

5. *Thielenhaus v. Thielenhaus*, 1995 OK 5, ¶9, 890 P.2d 925; *Williams v. Williams*, 1967 OK 97, ¶¶16–21, 428 P.2d 218.

6. *Longmire v. Longmire*, 1962 OK 219, ¶9, 376 P.2d 273; *Spencer v. Spencer*, 1947 OK 243, ¶8, 184 P.2d 761.

7. *Larman v. Larman*, 1999 OK 83, ¶8, 991 P.2d 536.

8. *Larman v. Larman*, see note 7, supra at ¶9; *Chastain v. Posey*, 1983 OK 46, ¶8, 665 P.2d 1179; *Fletcher v. Fletcher*, 1952 OK 28, ¶14–15, 244 P.2d 827.

9. *Chastain v. Posey*, see note 8, supra at ¶8; *Mendenhall v. Walters*, 1916 OK 524, ¶10, 157 P. 732.

10. *Larman v. Larman*, see note 7, supra at ¶9–10.

11. *Larman v. Larman*, see note 7, supra at ¶5. ("In short, where, as here, the 'owning spouse' is unable to refinance mortgaged property because the lender requires that, in order to qualify for a

*man,* the wife spoke to a loan officer about refinancing, and the officer advised her that the loans could not be made if title to both the properties remained solely in her name.[12] The lending institution prepared the deeds and mortgages, which were then signed by both spouses. The deeds conveyed title to them in the properties at issue as joint tenants.[13]

¶ 11 The husband in *Larman* confirmed by his testimony that: 1) the wife did not tell him she was making a gift to him of her inherited real estate; 2) he was not aware that the property was in joint tenancy or that he even had a claim of ownership in it until after his wife had commenced the divorce action; and 3) the husband first learned he was listed on the three deeds as a joint tenant when, at the suggestion of counsel, he obtained a copy of the documents.[14]

■ ¶ 12 Clear and convincing evidence exists in this cause that the husband did not possess donative intent when title was conveyed to both spouses in joint tenancy. Husband provides ample evidence beyond his own testimony indicating why the inclusion in the divisible marital estate by the trial court of the two rental properties purchased for his daughters was an error, and something that he did not intend. Husband argues that the closing company in charge of handling the transaction erroneously placed the properties in joint tenancy, against his intent. During trial, Husband called Larry Johnson, President of Guaranty Abstract Company (Guaranty), to testify regarding the two properties purchased for Husband's daughters. Johnson stated that in his review of Guaranty's files, that he did not find any instructions or other indications that either one of the properties was to be acquired by Husband and

Wife jointly.[15] In his view, the placing of the properties in joint tenancy on the Warranty Deed was a mistake made by Guaranty. He stated during trial:

> Q: With respect to the two rental properties we talked about however, the deeds that Guarantee Abstract prepared and that were field were not done consistent with what you were supposed to do?
>
> A: That is correct [16]

¶ 13 During cross-examination, Johnson did state that he was not present personally when either of the closings took place.[17] He stated that during closing, the buyer is presented with a deed or at least some document that asks the buyer how he or she wants to take title.[18] In other words, theoretically the buyer knows how they will be taking title. Johnson stated that nothing in the records indicated that Husband complained or thought anything was wrong at the time the two closings were completed for the properties purchased for his two daughters.[19]

¶ 14 However, Mr. Johnson's testimony concerning Guaranty's error and its accompanying caveats are not the only evidence indicating that husband never intended the two rental properties to become marital property. In a sworn affidavit, a Vice–President of F & M Bank & Trust Company, who handled the mortgage on one of the rental properties, stated that as part of the subject transaction, wife was required to sign the mortgage on the property, despite the fact that the application indicated that husband was to take title to the property in his individual name.[20] Another employee of F & M Bank & Trust Company, Debra Lee, handled the mortgage on the second rental property

loan, both spouses be record owners and sign the loan-related documents the presumption of a gift (arising from a joint-tenancy ownership regime) is overcome.'').

**12.** *Larman v. Larman,* see note 7, supra at ¶ 12.

**13.** *Larman v. Larman,* see note 7, supra at ¶ 12.

**14.** *Larman v. Larman,* see note 7, supra at ¶ 14.

**15.** Tr. Vol. IV, July 12 and 19, 2010, at pp. 125, 130.

**16.** Tr. Vol. IV, July 12 and 19, 2010, at p. 136–37.

**17.** Tr. Vol. IV, July 12 and 19, 2010, at p. 140.

**18.** Tr. Vol. IV, July 12 and 19, 2010, at pp. 138–39.

**19.** Tr. Vol. IV, July 12 and 19, 2010, at pp. 140–41.

**20.** R. 562, Ex. M.

and also submitted a sworn affidavit. It confirms the same facts for the second property: that husband was to take title in his individual name, that his spouse's signature was required to sign the mortgage, and that the buyer and borrower were to be husband individually.[21]

¶ 15 The Oklahoma Uniform Contracts of Sale of Real Estate for both properties indicate that the buyer was listed as the Morey J. Villareal Revocable Trust.[22] The Uniform Residential Loan Applications from F & M Bank and Trust for both properties indicate that title was to be held by Morey J. Villareal, A Married Person and further indicate that the borrower for both loans was to be Morey J. Villareal.[23] The Preliminary Setup Instructions document for the loan on one of the properties, from F & M Bank and Trust, specifically states: "Additional Instructions: This is a non owner occupied, Walter & Assoc. has sell side. He is married but wife is not on loan or app. She does not have to sign, right? ? ? Please confirm."[24] The closing information documents from F & M Bank and Trust for both properties list as the borrower only Morey J. Villareal.[25]

¶ 16 In short, there is clear and convincing evidence in the record indicating that husband intended to be the sole owner of the two rental properties in question when they were purchased, and had no intention of his wife being included on the deeds in joint tenancy. Wife asserts that these two rental properties were marital property, in spite of all the above evidence indicating to the contrary because: 1) the deeds prepared by Guaranty, not signed by either husband or wife and indicating no donative intent, convey both properties in joint tenancy; and 2) even though divorce proceedings had begun, the parties were involved in reconciliation when the properties were purchased.[26] The trial court agreed, holding that it was bound by the deeds indicating joint tenancy because the parties signed them.[27] That decision was erroneous. First, neither spouse signed the warranty deeds conveying the two properties; they were signed by the sellers. Second, spouses taking title as joint tenants only gives rise to the rebuttable presumption of a gift to the marital estate, if the property was originally held as separate property.[28] The logic of this rule applies equally to property that is purchased during marriage with the separate funds of one spouse, even if it was not already itself held as separate property. The presumption that husband intended the two rental properties purchased with his separate funds to become part of the marital estate is rebuttable by clear and convincing evidence of a different intent,[29] evidence which husband has provided.

## CONCLUSION

¶ 17 A divorce suit is one of equitable cognizance in which the trial court has discretionary power to divide the marital estate.[30] In an action of equitable cognizance there is a presumption in favor of the trial court's findings and they will not be set aside unless the trial court abused its discretion or the finding is against the clear weight of the evidence.[31]

¶ 18 The trial court's determination that the two rental properties purchased by Hus-

---

21.  R. 572, Ex. N.

22.  Uniform Contracts for Sale of Real Estate, Respondent's Trial Exhibits, No. 5 and Respondent's Trial Exhibits, No. 6.

23.  Uniform Residential Loan Applications, Respondent's Trial Exhibits, No. 5 and Respondent's Trial Exhibits, No. 6.

24.  Preliminary Setup Instructions, Respondent's Trial Exhibits, No. 5.

25.  F & M Bank Closing Information, Respondent's Trial Exhibits, No. 5 and Respondent's Trial Exhibits, No. 6.

26.  Appellee's Response to Appellant's Brief in Chief, pp. 7–8.

27.  See discussion, supra, at ¶ 5.

28.  *Larman v. Larman,* see note 7, supra at ¶ 9; *Chastain v. Posey,* see note 8, supra at ¶ 8; *Fletcher v. Fletcher,* see note 8, supra.

29.  *Larman v. Larman,* see note 7, supra at ¶ 9.

30.  *Jackson v. Jackson,* see note 2, supra at ¶ 7; *Larman v. Larman,* see note 2, supra at ¶ 17; *Teel v. Teel,* see note 2, supra at ¶ 7.

31.  *Francis v. Rogers,* see note 3, supra at ¶ 24 n. 22; *Groseclose v. City of Tulsa,* see note 3, supra at ¶ 18; *Krosmico v. Pettit,* note 3, see supra at ¶ 23.

band for the benefit of his daughters were part of the marital estate was erroneous because it was against the clear weight of the evidence. Clear and convincing evidence in the record indicated that husband never intended the two rental properties to become marital property, sufficient to rebut the presumption that a gift was intended despite the fact that husband and wife took title as joint tenants. Because the record does not indicate that the rest of the trial court's disposition of the marital estate was against the clear weight of the evidence, we affirm the remainder of the trial court's ruling and remand for proceedings consistent with this opinion. The wife's application for attorney fees is denied.

**CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF CIVIL APPEALS VACATED; AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

CONCUR: TAYLOR, C.J., COLBERT, V.C.J., KAUGER, WATT, EDMONDSON, REIF, JJ.

DISSENT: WINCHESTER, COMBS, GURICH, JJ.