2016 OK CIV APP 74

**In re the Marriage of: Patricia JOHN-SON, Petitioner/Appellee,**

**v,**

**Lee JOHNSON, Respondent/Appellant.**

**Case Number: No. 112,766**

Court of Civil Appeals of Oklahoma, Division No. 2.

Decided: 02/12/2016

Mandate Issued: 12/14/2016

Barry K. Roberts, Norman, Oklahoma and Fletcher D. Handley, Jr., THE HANDLEY LAW CENTER, El Reno, Oklahoma, for Petitioner/Appellee

Virginia Henson, PETERSEN, HENSON, MEADOWS, PECORE & PEOT, P.C., Norman, Oklahoma, for Respondent/Appellant

DEBORAH B. BARNES, JUDGE:

¶1 This appeal arises from the divorce proceedings of Respondent/Appellant Lee Johnson (Husband) and Petitioner/Appellee Patricia Johnson (Wife). Husband appeals the parties' divorce decree filed in March 2014. Husband's primary argument on appeal is that although the trial court "has jurisdiction of the dissolution action pursuant to 43 O.S. 102(B)"—which provides that "[a]ny person who has been a resident of any United States army post or military reservation within the State of Oklahoma, for six (6) months immediately preceding the filing of the petition, may ... be sued for divorce"— the trial court nevertheless lacked authority to divide Husband's military retirement. Husband asserts that "military retirement is the separate property of the servicemember by federal law." Husband further argues that to the extent a state court may divide a servicemember's retirement, it may do so only if the court has jurisdiction by reason of (1) the servicemember's residence, "other than because of military assignment, in the territorial jurisdiction of the court," (2) the servicemember's domicile in the territorial jurisdiction of the court, or (3) the servicemember's consent to the jurisdiction of the court, citing 10 U.S.C. 1408(c)(4). Husband asserts that none of the above requirements apply in this case because Husband is domiciled in the state of Washington, he is in Oklahoma only because of military assignment, and he has not consented to the jurisdiction of the Oklahoma district court, at least not with regard to his military retirement. He states that "[i]f Congress had intended to make military retirement divisible by" any state court with jurisdiction to enter a divorce, "it would have been simple for the [federal] statute to have said that. Instead, the statute distinguishes between residence which is sufficient to grant a divorce and residence which constitutes domicile." In other words, Husband asserts that although the Oklahoma Legislature, in 43 O.S. 102(B), has granted Oklahoma district courts authority over divorce proceedings involving service-

members based solely on residency resulting from military assignment, Congress has specifically limited the authority of state district courts to divide military pensions. Based on our review, we vacate that portion of the decree dividing Husband's military retirement. The decree is otherwise affirmed.

## BACKGROUND

¶ 2 The parties were married in 1993 in Bremerton, Washington. One child was born of the marriage (in 2006). In June 2011, Wife filed a petition for dissolution of marriage in the District Court of Comanche County, Oklahoma. The parties stipulate, however, that the present divorce action is the third domestic action between the parties filed in Comanche County. The first two actions were both filed by Husband: the first was an action for separate maintenance which was dismissed by the trial court, and the second was an action for divorce which resulted in a default divorce decree. However, the second action was ultimately vacated by the trial court as a result of insufficient service of process on Wife. After the second action was vacated, Wife filed the June 2011 petition initiating the divorce proceedings at issue.

¶ 3 In July 2011, Husband filed a special appearance and motion to dismiss. Husband asserted, among other things, that the court has no jurisdiction to divide his military retirement because he is not domiciled in Oklahoma but is only in Oklahoma by reason of his military assignment to Fort Sill. He stated he has no intention of remaining in Oklahoma when his assignment ends.

¶ 4 The trial court denied Husband's motion and trial was held on June 27, 2013, after which the trial court issued the divorce decree, filed on March 26, 2014, dividing the marital property of the parties, including Husband's military retirement.[1] The trial court granted a divorce on the grounds of incompatibility, and ordered Husband to pay Wife child support in the amount of $1,401.09 per month from July 2013 until January 2014, and $1,200.03 per month thereafter. The trial court also divided various items of

personal property between the parties, and ordered Husband to pay Wife alimony in lieu of property division in the amount of $8,682.47. Regarding Husband's military retirement, the trial court found it "has jurisdiction to enter an order dividing the military retirement of [Husband] because of [Husband's] domicile in the State of Oklahoma and for reason that he previously filed a petition for separate maintenance and a petition for divorce in this County." The trial court awarded Wife 50% of Husband's military retirement accrued during the parties' sixteen-year marriage.

¶ 5 From the divorce decree, Husband appeals.

## STANDARD OF REVIEW

¶ 6 "A divorce suit is one of equitable cognizance in which the trial court has discretionary power to divide the marital estate." *Colclasure v. Colclasure*, 2012 OK 97, ¶ 16, 295 P.3d 1123 (footnote omitted). The division of property acquired during the marriage by the joint industry of the husband and wife must be fair, just and reasonable. *Id.*; 43 O.S. Supp. 2012 121(B). "However, a marital estate need not necessarily be equally divided to be an equitable division because the words just and reasonable in 121 are not synonymous with equal." *Colclasure*, ¶ 16 (footnote omitted). "The trial court has wide latitude in determining what part of jointly-acquired property shall be awarded to each party." *Id.* (footnote omitted). This Court will not disturb the trial court's decision regarding property division unless the trial court abused its discretion or the decision is clearly against the weight of the evidence. *Standefer v. Standefer*, 2001 OK 37, ¶ 19, 26 P.3d 104. *See also Smith v. Villareal*, 2012 OK 114, ¶ 7, 298 P.3d 533 (In an action of equitable cognizance there is a presumption in favor of the trial court's findings and they will not be set aside unless the trial court abused its discretion or the finding is clearly against the weight of the evidence.).

---

1. Although the parties had one child, issues concerning the custody of that child had been previously determined—by a court in the country of Brazil (where Wife lives with her parents and the child)—and were not the subject of the present divorce action.

¶ 7 "Questions of jurisdiction may be raised at any time, either in the trial court or on appeal; and even in the absence of an inquiry by the litigants, [this] court may examine jurisdiction." *Woods Petroleum Corp. v. Sledge*, 1981 OK 89, 632 P.2d 393 (footnote omitted). Questions concerning a district court's jurisdictional power invoke the *de novo* standard of review. *Jackson v. Jackson*, 2002 OK 25, 45 P.3d 418. *See Stidham v. Special Indemnity Fund*, 2000 OK 33, ¶ 10, 10 P.3d 880 ("Once an issue is identified as jurisdictional, it calls for a *de novo* review.") (footnote omitted). Statutory interpretation, involving a question of law, also demands a *de novo* review standard. *Stump v. Cheek*, 2007 OK 97, ¶ 9, 179 P.3d 606.

## ANALYSIS

### I. Husband's Military Retirement

¶ 8 As Husband admits, the trial court had jurisdiction over these divorce proceedings under 43 O.S. 2011 102(B), which provides as follows:

Any person who has been a resident of any United States army post or military reservation within the State of Oklahoma, for six (6) months immediately preceding the filing of the petition, may bring action for divorce or annulment of a marriage or may be sued for divorce or annulment of a marriage.

¶ 9 However, as stated by the Supreme Court of the United States,

[t]he Supremacy Clause provides a clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2. Under this principle, Congress has the power to preempt state law. There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision.

*Arizona v. United States*, 567 U.S. 387, 132 S.Ct. 2492, 2500–01, 183 L.Ed.2d 351 (2012) (citations omitted).

¶ 10 The federal statute at issue in this case is the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. 1408 (2012) (the Act), "which authorizes state courts to treat 'disposable retired or retainer pay' as community property" subject to equitable division in a divorce proceeding. *Hayes v. Hayes*, 2007 OK CIV APP 58, ¶ 8, 164 P.3d 1128 (citation omitted).[2] However, the Act provides, in pertinent part, as follows:

A court may *not* treat the disposable retired pay of a member in the manner described in paragraph (1) unless the court has jurisdiction over the member by reason of (A) his residence, *other than because of military assignment*, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court.

Section 1408(c)(4) (emphasis added). As stated by the Supreme Court of Colorado:

The question of whether a trial court acquires jurisdiction *over a military member's military pension* is governed not by principles of state rules of in personam jurisdiction or procedure, but rather by the specific terms of the Act that, by virtue of the Supremacy Clause of the United States Constitution, in effect preempt state rules of procedure insofar as *jurisdiction to consider this particular asset* is concerned.

*Matter of Marriage of Booker*, 833 P.2d 734, 739 (Colo. 1992) (emphasis added).

¶ 11 The Supreme Court of Pennsylvania has stated that, "in keeping with the federal policy to keep federal intrusion into the area of domestic relations at a minimum, the Act controls the authority that state family law courts have over a single item, military retirement pay." *Wagner v. Wagner*, 564 Pa. 448, 768 A.2d 1112, 1118 (2001).

In the Act, Congress did not purport to regulate any other of the several issues that may arise in a military member's di-

---

2. "Disposable retired or retainer pay is defined as the total monthly retired or retainer pay to which a military member is entitled, less certain deductions." *Hayes*, 2007 OK CIV APP 58, ¶ 8, 164 P.3d 1128 (internal quotation marks omitted) (citation omitted).

**1054**

vorce nor did it purport to speak to a member's conduct in litigation with regard to any issue but the retirement pay. Section 1408(c)(4) preempts state long-arm statutes only in connection with a court's authority to determine a military member's retirement pay, and leaves all other rules by which state courts acquire personal jurisdiction over a military member for divorce and ancillary economic issues untouched.

*Wagner*, 768 A.2d at 1118.

¶ 12 In *Wagner*, the servicemember objected to the court's jurisdiction over his military retirement, and the parties conceded the member was neither a resident nor a domiciliary of the state (Pennsylvania). Therefore, the issue on appeal was whether the member had consented to the jurisdiction of the Pennsylvania court under 1408(c)(4)(C). The *Wagner* Court specifically addressed the meaning of 1408(c)(4)(C)—i.e., a servicemember's "consent to the jurisdiction of the court"—explaining as follows:

By its terms, 1408(c)(4)(C) reflects Congress' narrow aim. While the reference to jurisdiction in 1408(c)(4)(C) is unqualified, 1408(c)(4)(C) contains a reference to 1408(c)(1)'s specific focus on the retirement pay. Reading the language of 1408(c)(4)(C) in context and consistently with the Act's scope and object, we believe that Congress intended for the consent requirement in 1408(c)(4)(C) to relate, like the rest of the Act, specifically to a military member's pension.

768 A.2d at 1118. The *Wagner* Court further stated:

Indeed, to determine otherwise, as did the Superior Court, would run counter to Congress' purpose. The right to consent in 1408(c)(4)(C) carries with it, of course, the right not to consent. Under the Superior Court's construction of the statute, a military member who seeks 1408(c)(4)(C)'s protection should withhold his consent to the trial court's personal jurisdiction in general. Taken to its logical conclusion, however, the Superior Court's construction would mean that Congress gave a military member, who succeeds in withholding his consent under the statute, the power to

veto the personal jurisdiction a court might otherwise have to dissolve a marriage or to determine the various matters, including the partition of other marital assets, that divorce actions raise. Given the federal principle that family law is preeminently a local matter and the limited focus of the Act, this simply cannot be the case.

768 A.2d at 1118–19. The *Wagner* Court concluded, therefore, that "the assertion that has legal meaning is one (like the assertion made by [the servicemember]) that withholds consent specifically to the court's jurisdiction with respect to the retirement pay." *Id.* at 1119. The *Wagner* Court stated that

the alternative suggestions the [lower court] gave to [the] military member to insure against a finding of consent under the statute—refuse service or make no appearance—are ill-advised. They encourage a military member to flout process and force upon him an unreasonable choice between participating in and remaining absent from important judicial proceedings.

*Id.*

¶ 13 The *Wagner* Court "conclude[d] that under 1408(c)(4)(C) ... courts may not exercise the authority they are provided in the Act to distribute a military member's retirement pay in a divorce action, *unless the member consents to the court's jurisdiction over his person specifically to distribute the retirement pay.*" 768 A.2d at 1119 (emphasis added). We find the *Wagner* Court's interpretation of 1408(c)(4)(C) to be instructive. *See also In re Marriage of Tucker*, 226 Cal. App.3d 1249, 1259, 277 Cal.Rptr. 403, 409 (1991) (Pursuant to 1408(c)(4)(C), the servicemember must "consent[ ]" to disposition of [the member's] military retirement" in order for the trial court to divide the military retirement benefits.).

¶ 14 The *Wagner* Court's interpretation is also consistent with the following general guidance provided by the Supreme Court of the United States regarding the appropriate interpretation of the Act:

We realize that reading the [Act] literally may inflict economic harm on many former spouses. But we decline to misread the statute in order to reach a sympathetic

result when such a reading requires us to do violence to the plain language of the statute and to ignore much of the legislative history. Congress chose the language that requires us to decide as we do, and Congress is free to change it.

*Mansell v. Mansell*, 490 U.S. 581, 594, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).[3]

¶ 15 Indeed, it appears that conflicting interpretations have only arisen under 1408(c)(4)(C) where the military member remained silent regarding the court's authority to divide the military retirement, and only contested that authority later. That is, there appear

> to be conflicting interpretations between states regarding the meaning of "consent" under subsection (c)(4)(C) of the [Act]. The disagreement stems from *whether implied consent* satisfies the requirements of subsection (c)(4)(C). While some states have rejected the theory of implied consent, others have held that implied consent satisfies the requirements of the [Act] or that the protections of the [Act] may be waived through state procedural rules. Among those states accepting the theory of implied consent, there also appears to be disagreement regarding whether the military spouse's participation in the underlying dissolution proceedings provides a continuing basis to exercise jurisdiction with respect to post-dissolution proceedings to divide military retirement pay.

*Davis v. Davis*, 230 Ariz. 333, 284 P.3d 23, 26–27 (Ariz. Ct. App. 2012) (emphasis added) (footnote omitted). In *Davis*, the court stated that 1408(c)(4)(C) *does not require express consent*, and "a state court may exercise personal jurisdiction" over a military member's retirement when that member "makes a general appearance *without expressly contesting personal jurisdiction*." 284 P.3d at 27 (emphasis added).

¶ 16 In the present case, however, Husband promptly and expressly contested personal jurisdiction of the court with regard to his retirement pay. By comparison, in *Davis*:

> by the time [the servicemember] first contested personal jurisdiction (and, even then, only in communications with the special master), [he] had: (1) made a general appearance; (2) personally and through counsel appeared at a court hearing; (3) specifically requested a special master be appointed to address his retirement pay; and (4) sought clarification about the special master's role and payment of the special master's fees.

284 P.3d at 28.

¶ 17 The *Davis* Court concluded that "[b]y making an appearance, requesting affirmative relief from the court and taking these other actions *before raising any personal jurisdiction issue*, [the servicemember] consented to Arizona's jurisdiction." 284 P.3d at 28 (emphasis added). However, in the present case, Husband immediately contested the court's authority and jurisdiction to divide the military retirement, and at all stages of the proceeding Husband renewed his objection to the court's authority in this regard.

■ ¶ 18 Returning to the possible grounds for exercising jurisdiction over Husband's military retirement in the present case, the trial court, in the divorce decree, found it had authority to divide Husband's military retirement for two reasons: (1) "because of [Husband's] domicile in the State of Oklahoma," and (2) "for reason that [Husband] previously filed a petition for separate maintenance and a petition for divorce in this County," thereby consenting to the court's jurisdiction to divide his military retirement. Given the above discussion, however, it is clear that the second reason is insufficient. Although Husband filed the two prior domestic actions in Comanche County, Husband never specifically consented to the district court's jurisdiction with respect to his mili-

---

**3.** We note that the *Mansell* Court stated that Sections 1408(c)(2), (c)(3), and (c)(4) impose new substantive limits on state courts' power to divide military retirement pay.... [Section] 1408(c)(4) prevents spouses from forum shopping for a State with favorable divorce laws.

*Mansell,* 490 U.S. at 590–91, 109 S.Ct. 2023 (footnote omitted). "[T]he legislative history of the Act shows that Congress sought to curtail a spouse's forum shopping...." *Wagner,* 768 A.2d at 1115.

tary retirement.[4] Moreover, as stated above, Husband specifically objected in the present action to the court's jurisdiction with regard to his military retirement, and he did so promptly and at all stages of the proceedings.

¶ 19 As to the first reason provided by the trial court—i.e., that the court has jurisdiction to divide the military retirement because Husband's domicile is in Oklahoma—while it is an otherwise appropriate basis under the Act, it is not supported by the record. Under the Act, "[a] person's domicile is that place where he has his true, fixed and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Southern v. Glenn*, 677 S.W.2d 576, 583 (Tex. App. 1984) (citation omitted). *See also* Black's Law Dictionary (10th ed. 2014) ("The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere."). As stated above, the parties were married in the state of Washington, which Husband asserts he has maintained as his domicile. Moreover, Wife did not contradict Husband's position that he is not domiciled in Oklahoma; rather, she testified that, following their marriage in Washington, she and Husband were constantly on the move as a result of Husband's military assignments. She testified they

> moved countless places, thirteen or fourteen times together in sixteen years of marriage. Just about everywhere. We stayed in the United States most of the time. We went to Germany and to Italy for a year and a half each. Then to Brazil for a year. That is when the separation took place, while we were stationed in Brazil.

**4.** In addition, the first action was dismissed, and the second action resulted in a divorce decree that was vacated. Therefore, there can be no basis for implied consent based on the prior proceedings which are now void and, for all practical purposes, nonexistent.

**5.** Tellingly, not even Wife attempts to argue that Husband was domiciled in Oklahoma; rather,

¶ 20 Husband did not move to Oklahoma until after the parties' separation, and he did so only as a result of military assignment. Husband testified that the period of time from December 2009 to January 2010 "was the transition from Brazil to Fort Sill," where Husband "was assigned to the 31st air defense artillery and then to the 75th fire brigade." Husband testified he was stationed at Fort Sill for only "[t]wo and a half years" where he was "a resident but not domicile[d]."[5] Consequently, we conclude the trial court's finding that Husband was domiciled in Oklahoma for purposes of exercising jurisdiction over Husband's military retirement under the Act is clearly against the weight of the evidence.

¶ 21 Accordingly, because the trial court did not have jurisdiction over Husband's military retirement by reason of (1) Husband's residence, *other than because of military assignment*, (2) Husband's domicile, or (3) Husband's consent to the jurisdiction of the court to divide his military retirement, the trial court lacked authority under 1408(c)(4) to do so. This portion of the divorce decree is, therefore, vacated.

## II. Day Care Expenses

¶ 22 Husband also contests two of the ancillary economic issues addressed by the trial court: the alimony in lieu of property division awarded to Wife (discussed in the following section), and the day care expenses. In the divorce decree, Husband was ordered to pay his "percentage share of the child care [i.e., day care] expenses" as reflected in the child support guidelines attached to the decree. The monthly child care (or day care) expenses were set at $225. Based upon the monthly incomes of the parties—$11,150.50 per month for Husband, and $1,256.67 per month for Wife—Husband was ordered to pay Wife $202.21 of the $225 total in monthly child care expenses.

> Wife asserts "[Husband] submitted to the jurisdiction of the District Court of Comanche County by himself twice filing actions in that court by which he sought an order of the court granting him a divorce and dividing marital property." This aligns with the second reason offered by the trial court, which we discuss above. *See also* n.4, *supra.*

¶ 23 Husband does not appear to contest the monthly amount of child care expenses set by the trial court; rather, he argues the trial court "should not have required [him] to share in day care expense." Husband admits, however, that sharing child care expenses is mandatory where child care is reasonably necessary to enable either parent to (1) be employed, (2) seek employment, or (3) attend school or training to enhance employment income. *See* 43 O.S. 2011 118G. Wife testified, as Husband admits, that she was studying for a government test in Brazil; that she was attending classes that met from 10:00 a.m. until noon and from 2:00 p.m. to 5:30 p.m.; and that she could not pick up the child until after 5:30 p.m. "[T]he credibility of witnesses and the weight and value to be given to conflicting or inconsistent testimony are matters primarily for determination by the trial court." *Catron v. First Nat. Bank & Trust Co. of Tulsa*, 1967 OK 107, ¶ 26, 434 P.2d 263 (citations omitted). "A trial judge is able to judge the credibility of the witnesses and the weight of their testimony better than this Court on appeal from a trial court's judgment." *S.W. v. Duncan*, 2001 OK 39, ¶ 32, 24 P.3d 846 (citation omitted). Consequently, we conclude the trial court did not abuse its discretion in ordering Husband to pay toward the monthly child care expenses.

### III. Alimony in Lieu of Property Division

¶ 24 Husband's final argument concerns a certain mutual fund account (the Allianz account) that the trial court valued at $9,580.33, awarded to Husband, and credited in favor of Wife in its calculation of alimony in lieu of property division.[6] As stated above, the trial court ultimately ordered Husband to pay Wife alimony in lieu of property division in the amount of $8,682.47.

¶ 25 Husband asserts the trial court made a mathematical error with regard to the Allianz account. He asserts that the account was "worth $18,553.33 as of the date of separation," and he further asserts that although this account was in his possession at the time

of separation, he subsequently paid $8,973 out of the account to Wife. Husband asserts that, if properly allocated, the trial court "should have valued the account at $18,553.33 and allocated $8,973.00 to [Wife] and $9,580.33 to [Husband]."

¶ 26 In Wife's Answer Brief, she admits that the trial court "accepted [Husband's] evidence that he had paid a portion of the account to [Wife]," citing to the following portion of the trial transcript where the trial court stated as follows:

I do find that under the [Allianz account] that there is some dispute about the value of that fund.

[Wife] has claimed it was worth, upon the date of separation, [$]18,553.33. [Husband] has claimed according to Exhibit 42 that he has paid her monies as offsets against that account totaling, by my arithmetic, $8,973. He does appear to have some documentation to support that.

So I will make a finding that the value of that fund was $9,5[8]0.[33].

¶ 27 Thus, the parties agree, and the trial court found, that the Allianz account was worth $18,553.33 at separation, that Husband transferred $8,973 from that account to Wife, and that Husband kept the remaining $9,580.33. It is also clear from Exhibit C, attached to the divorce decree, where the trial court set forth its calculation which resulted in the property division alimony award to Wife, that the trial court did not offset the value of the Allianz account kept by Husband by the amount transferred to Wife after separation.

¶ 28 However, given all the facts and circumstances of this case, we are unable to say the trial court abused its wide discretion in failing to offset the Allianz account value by the amount transferred to Wife after separation. The total value of the assets divided in arriving at the alimony in lieu of property division award is over $300,000. An equitable division *does not mean an equal division*, and a modification of this portion of the decree on the grounds offered by Husband—

---

**6.** "Alimony in lieu of a division of property is not for support, rather it is an equitable disposition of property." *First Cmty. Bank of Blanchard v.*

*Hodges*, 1995 OK 124, 907 P.2d 1047 (citation omitted).

a modification that would eviscerate the already relatively modest alimony in lieu of property division awarded to Wife—would constitute a failure on the part of this Court to apply the appropriate standard of review owed to the trial court's determinations. A reduction of the $8,682.47 alimony in lieu of property division award might be appropriate if this Court were reviewing the property division for perfect mathematical equality. However, because we review the division to ensure it is equitable—not necessarily equal—and because we must give the trial court wide latitude in this regard, we affirm this portion of the divorce decree.

## CONCLUSION

¶29 Based on our review, we vacate that portion of the divorce decree dividing Husband's military retirement. The decree is otherwise affirmed.

¶30 **AFFIRMED IN PART AND VACATED IN PART.**

THORNBRUGH, P.J., and RAPP, J., concur.