GILLETT v. MCKINNEY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:GILLETT v. MCKINNEY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 GILLETT v. MCKINNEY
2019 OK CIV APP 24
Case Number: 115742
Decided: 04/04/2019
Mandate Issued: 05/01/2019
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2019 OK CIV APP 24, __ P.3d __

 
SARAH JANE GILLETT and ANNE ELIZABETH RICHMOND, Petitioners/Appellants,
v.
DEBORAH B. MCKINNEY, Respondent/Appellee.
APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA
HONORABLE MARTHA OAKES, TRIAL JUDGE
AFFIRMED
James A. Kirk, Amber M. Brock, KIRK & CHANEY PLLC, Oklahoma City, Oklahoma, for Petitioner/Appellant
Charles O. Schem, HESTER SCHEM HESTER & DEASON, Oklahoma City, Oklahoma, for Respondent/Appellee
JOHN F. FISCHER, JUDGE:
¶1 Kenneth N. McKinney,[1] appeals the district court's order in this divorce action denying his request for credit for all of the 2014 and 2015 federal income tax credits and overpayments. Based on our review of the record, the district court's order in favor of Deborah B. McKinney is not against the clear weight of evidence and is affirmed.
BACKGROUND
¶2 The parties were married in 1998. They separated on October 3, 2015, and the petition for divorce was filed on October 20, 2015. The parties resolved the majority of their issues through mediation. They did not resolve who was to receive credit for the excess taxes paid in conjunction with their 2014 income tax returns or the excess in estimated taxes paid for their 2015 income tax liability. The district court held a hearing to resolve those issues. The district court found that husband's deposit of his separate funds into the parties' joint accounts "took away the separate identity and character" of those funds. The court also found that any of husband's separate funds used to pay the parties' income taxes had been commingled with their marital funds. According to the district court, wife's use of one-half of those funds was "fair and equitable." Based on these findings, the district court denied husband's request to credit him with all of the tax credits and overpayments. Husband appeals the district court's disposition of the 2014 and 2015 tax issues.
STANDARD OF REVIEW
¶3 In an action for divorce, the division of property "is one of equitable cognizance and in reviewing a case of equitable cognizance, the judgment of the trial court will not be disturbed unless the trial court abused its discretion or unless the court's finding was clearly against the weight of the evidence." Hough v. Hough, 2004 OK 45, ¶ 12, 92 P.3d 695 (citing Merritt v. Merritt, 2003 OK 68, ¶ 7, 73 P.3d 878). "A trial court's valuation of a marital estate will not be disturbed unless it is against the clear weight of evidence, and our cases demonstrate considerable deference to a trial court's valuation of marital assets in a divorce." Childers v. Childers, 2016 OK 95, ¶ 12, 382 P.3d 1020.
ANALYSIS
¶4 Husband raises two issues in this appeal. First, he argues that the district court erred in not awarding him $115,994 in tax refunds and overpayments as his separate property. Second, he contends that the district court erred when it did not order wife to reimburse him for $9,625 in additional taxes he had to pay because wife filed a separate, rather than a joint income tax return for 2015.
I. The Separate Property Issue
¶5 The parties filed joint individual income tax returns for the 2014 tax year and received a partial refund for the taxes paid in conjunction with that return. In addition, during 2015 and prior to the filing of the petition for divorce, the parties made estimated tax payments for the 2015 tax year. The estimated tax payments exceeded the amount of income tax eventually owed for 2015.
¶6 At the hearing on this matter, husband called an expert witness who testified that he could trace the source of the 2014 and 2015 tax payments to deposits made to the parties' joint account. According to the expert, deposits made to cover those payments came from withdrawals from husband's IRA. Wife used one-half of the 2014 refund and one-half of the 2015 overpayments, in the total amount of $115,994, to pay her 2015 income tax liability. It is not disputed that the funds and assets in husband's IRA are his separate property. Nor is it disputed that, from time to time, husband would withdraw funds from his IRA and deposit those funds into the parties' joint accounts. Some of these deposits approximately coincide with the 2014 and 2015 tax payments at issue in this case. The question is whether the funds withdrawn from husband's IRA remained his separate property once they were deposited in the parties' joint accounts, even if the tax payments can be "traced" to some of the deposits.
¶7 Husband urges us to follow the approach taken in the Uniform Marital Property Act of 1983. See Unif. Marital Prop. Act §§ 1-26, 9A U.L.A. 110-158 (Master Ed.1998). Section 14(a) of that Act provides that "mixing marital property with property having any other classification reclassifies the other property to marital property unless the component of the mixed property which is not marital property can be traced." Id. at 141. Oklahoma has not adopted the Uniform Marital Property Act. And, despite husband's argument to the contrary, we do not find that provision consistent with Oklahoma law. The deposit of separate property into a joint account may not automatically convert the separate property into marital property. Cf., Smith v. Villareal, 2012 OK 114, ¶ 9, 298 P.3d 533 ("A transfer by one spouse of separate property to another does not by itself erase the separate character of the asset or real property transferred . . . ."). However, separate property given to a spouse is no longer separate property even though it might be traced. Chastain v. Posey, 1983 OK 46, 665 P.2d 1179 (transfer of title to separate property from one spouse to another presumes a gift of the separate property to the other spouse). Therefore, we decline to accept husband's invitation to follow the Uniform Marital Property Act of 1983, particularly when the Oklahoma Legislature has not chosen to adopt the Act during the last thirty-five years. Consequently, husband's separate ownership of the excess tax payments depends on existing Oklahoma precedent.
¶8 At the conclusion of this divorce proceeding, the district court was required to "enter its decree confirming in each spouse the [separate] property owned by him or her before marriage and the undisposed-of property acquired after marriage by him or her in his or her own right." 42 O.S. Supp. 2012 § 121(B). As relevant to this case, separate property means: "property owned by a spouse prior to the marriage, which retained its separate status during the marriage because it was maintained as separate property . . . ." In re Estate of Hardaway, 1994 OK 30, ¶ 9, 872 P.2d 395. Husband's expert testified that he was able to "trace" the tax payments to the husband's separate funds because the comparatively large tax payments generally coincided with comparatively large deposits into the joint accounts made a few days before or a few days after withdrawals from husband's IRA.
¶9 Although the expert's tracing evidence has some record support, it is not conclusive. The most notable example concerns the estimated taxes paid for the third quarter of 2015. On September 15, 2015, checks totaling $73,684 were written to the IRS and the Oklahoma Tax Commission from the parties' joint checking account. On September 22, 2015, $20,000 was withdrawn from husband's IRA and deposited in the parties' joint checking account. However, on September 14 and 15, $60,000 was withdrawn from the parties' joint savings account and deposited into the parties' joint checking account. Apparently, those two deposits were necessary to cover the $73,684 in tax payments.
¶10 It is not disputed that the savings account was a joint account, but husband's expert argued that this $60,000 also should be attributed to husband because funds in the joint savings account could be traced to a deposit made a year earlier from husband's separate funds. On August 15, 2014, $250,000 was withdrawn from husband's IRA and deposited in the parties' joint checking account. On August 21, 2014, $200,000 was transferred from the joint checking account to the joint savings account, which had a balance of $648.80 before the deposit. The expert provided no evidence about the balance in the checking account prior to the $250,000 deposit, the purpose for which the deposit was made or the use of the $50,000 that was not transferred to the joint savings account.
¶11 If the $60,000 in the joint savings account were not husband's separate funds, then $53,684 of the September 2015 tax payments were made from marital property. The district court was not required to accept the expert's testimony on this issue. The district court could give that testimony the value it thought the testimony should receive. Childers v. Childers, 2016 OK 95, ¶ 18, 382 P.3d 1020. And, for the following reasons discussed, we are not persuaded that funds from husband's separate property, "traced" to deposits in the parties' joint accounts, remained husband's separate property.[2]
¶12 It does appear from the expert's testimony and exhibits that deposits into the parties' joint checking account from husband's IRA on June 16, 2015, exceeded, by $61, the checks written on June 14, 2015, to cover their second quarter estimated tax payments. On the other hand, deposits from husband's IRA did not cover $15,600 of the $282,600 paid on April 14, 2015, in conjunction with the parties' requested extension to file their 2014 tax returns.
¶13 Also problematic with the expert's approach is the number of comparatively large withdrawals from husband's IRA deposited in the parties' joint accounts at times when no tax payments were made. In 2014, husband made five withdrawals from his IRA, $38,000 in April, $50,000 in May, $22,000 in June, $80,000 in July and the $250,000 withdrawal in August previously discussed. Likewise, in 2015 husband withdrew $60,000 in March, $267,000 in April, $91,500 in June, $15,000 in July and $20,000 in September from his IRA. The expert attributes only the April, June and September withdrawals to tax payments. The April withdrawal was $15,600 less than the payment amount; the June withdrawal exceeded the amount paid by $16,000, and the September withdrawal was $53,784 less than the amount paid.
¶14 Viewed in isolation, the three "tax deposits" support to some extent the expert's method of "tracing" tax payments to husband's separate funds. However, it is equally plausible that on ten occasions during this time period husband withdrew relatively large amounts from his IRA, which he deposited in the parties' joint accounts. Those funds, commingled with wife's separate property and other marital income, were used to pay for the parties' living expenses, including their taxes. Only three of those ten withdrawals occurred in proximity with payments made to the IRS and the Oklahoma Tax Commission. Husband's expert conceded that some withdrawals from husband's IRA were properly used by the parties to pay their marital expenses such as utility bills, ad valorem taxes, insurance and similar items. However, the expert offered no explanation as to why the three tax deposits should be treated as traceable separate property, when the other deposits admittedly became marital property.
¶15 Following this expert's theory to its logical conclusion, all of the deposits from husband's separate property could be traced to the parties' marital expenses, the payment of which husband was jointly liable. Husband's expert offered no explanation why only the tax payments, and not payment of all the marital expenses, should be traceable to husband's separate property. Husband does not seek reimbursement for the funds used to pay these other marital expenses, and he would not be entitled to that relief. See Teel v. Teel, 1988 OK 151, 766 P.2d 994 (marital debts can offset value of marital property in determining equitable division of property). Although husband was the only party to call an expert witness, his expert's testimony, even if accepted, does not resolve the issue of the ownership of husband's separate property once the funds were deposited into the parties' joint accounts.
¶16 When a deposit is made into a bank account held in the name of two or more persons, "such deposit, or any part thereof, or any interest thereon, may be paid to either of the persons . . . ." 6 O.S.2011 § 901(A). Although the deposit of separate funds into a joint account does change the title to those funds, merely placing one spouse's name on the title to separate property does not automatically convert the separate property into marital property. "A transfer by one spouse of separate property to another does not by itself erase the separate character of the asset . . . ." Larman v. Larman, 1999 OK 83, ¶ 8, 991 P.2d 536. Accord Smith v. Villareal, 2012 OK 114, ¶ 9, 298 P.3d 533 (husband rebutted presumption that real property purchased with his separate funds was intended as a gift to wife merely because it was purchased during the marriage and husband put wife's name on the title). However, the separate nature of property may be lost if it is commingled with other property. See in re Mullendore's Estate, 1956 OK 81, 297 P.2d 1094 (property devised to another lost its separate character when the proceeds from the sale of that property were commingled with testatrix's other funds in her bank account). The classification of the property depends on the facts of the case.
¶17 Even though it is undisputed that the IRA was husband's separate property, a spouse "may treat separate property in a manner so that it alters their legal relationship to the property, and it becomes property of the marital estate." Standefer v. Standefer, 2001 OK 37, ¶ 16, 26 P.3d 104. Separate property "retains its separate status during coverture because it is maintained in an uncommingled state as a spouse's individual property." Thielenhaus v. Thielenhaus, 1995 OK 5, ¶ 9, 890 P.2d 925.
¶18 Here, the withdrawals from husband's IRA were not deposited into a separate account but into an account jointly owned by husband and wife and commingled with wife's separate property. The taxes and the parties' living expenses were paid from the joint account. According to this record, the only source of deposits into the joint account, other than deposits from husband's IRA, came from marital property, that is, husband and wife's earned income during the marriage, and wife's separate property -- gifts and distributions from her parents and their business. Absent an agreement between the parties to use wife's income to pay living expenses and husband's separate property to pay income taxes, there is no basis to distinguish joint account funds to pay living expenses from joint account funds used to pay the parties' income tax liability. There is no such agreement in this record.
¶19 Further, when husband withdrew funds from his IRA, he incurred a tax liability. Husband's expert testified that the withdrawals from husband's IRA during this time were generally made without withholding the taxes due on the withdrawal. It does not appear that husband treated this liability as his personal obligation for which he filed a separate tax return. The tax due on these withdrawals was treated as the obligation of both parties and included in the joint return the parties filed for 2014.
¶20 Finally, wife paid $109,795 for the 2015 tax year. The expert identified $37,903 of wife's separate funds that she used to pay those taxes. The difference is $71,892. Nonetheless, husband argues that wife used $115,994 of his separate money to pay her taxes and that he is entitled to that entire amount.
¶21 This not a case where proof of a gift of marital property to one spouse from the other is necessary, as husband argues. The deposits from husband's IRA were used to pay marital debts for which he was personally liable. "The elements necessary to establish an inter vivos gift include "freedom of will on the part of the donor." In re Estate of Estes, 1999 OK 59, ¶ 29, 983 P.2d 438. Discharging one's personal liability, even if the debt is owed jointly with a spouse, does not constitute the "freedom of will" necessary for an inter vivos gift. In addition, a "gift must be gratuitous and irrevocable and go into immediate and absolute effect with the donor relinquishing all control." Id. Husband's "gift" was deposited into a joint account over which he retained control.
¶22 We have reviewed the record and find that the evidence produced at the hearing on this issue supports the district court's decision. It is not disputed that the parties maintained joint accounts and that the contested tax payments were made from the parties' joint checking account. It is not disputed that wife earned approximately $200,000 per year during this time and deposited all of her paychecks into the joint accounts. And, it is not disputed that annual gifts from wife's parents to the parties and wife's distribution of her separate property from her family's business were deposited into the joint accounts. All of these funds were commingled in the joint checking account and were used to pay the parties' utility bills, ad valorem taxes, husband's substantial medical bills, insurance bills and other household expenses, including the parties' income tax liability. "Both parties liquidated their personal holdings and combined the accumulation to jointly [pay their debts]." Johnston v. Johnston, 1968 OK 47, ¶ 14, 440 P.2d 694.
¶23 Money, once combined, "becomes a fungible unidentifiable property." State ex rel. Okla. Bar Ass'n v. Combs, 2007 OK 65, n.24, 175 P.3d 340. The fungible character of the money deposited into the parties' joint accounts defeats husband's attempt to "trace" the payment of the parties' joint tax liability to a particular source, including the deposits from husband's IRA.
II. Husband's Additional Tax Issue
¶24 Husband argues that the district court erred in refusing to order wife to reimburse him for $9,625 husband claims he had to pay in taxes because wife filed a separate tax return, "married filing separately," for 2015. There is no dispute that if the parties had filed a joint return, as they had in prior years, their cumulative tax liability would have been $9,625 less. However, there is evidence in this record showing that wife separately filed her return because husband's agents refused to communicate with her concerning the filing of their 2015 return. Based on our review of this evidence, we do not find the district court's ruling to be against the clear weight of the evidence or inequitable.
CONCLUSION
¶25 We have reviewed the record in this divorce action and find that the district court ruling on the tax issues is not unjust, inequitable or clearly against the weight of the evidence. The district court's order is affirmed.
¶26 AFFIRMED.
THORNBRUGH, J., concurs, and GOODMAN, J., concurs in result.
FOOTNOTES
[1] During this appeal, Mr. McKinney died. The motion to substitute Sarah Jane Gillett and Anne Elizabeth Richmond, McKinney's personal representatives, was granted on October 31, 2018.
[2] Husband's expert also testified that additional "flow-through" deposits totaling $15,114.20 were made during this time period from sources attributable to husband's separate property. Even if those deposits were treated as husband's separate property, an additional $38,570 of marital property would have been required to cover the September 2015 tax payments.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 151, 766 P.2d 994, 60 OBJ 17, Teel v. Teel
Discussed
 1994 OK 30, 872 P.2d 395, 65 OBJ 959, In the Matter of the Estate of Hardaway
Discussed
 2001 OK 37, 26 P.3d 104, 72 OBJ 1190, STANDEFER v. STANDEFER
Discussed
 1956 OK 81, 297 P.2d 1094, IN RE MULLENDORE'S ESTATE
Discussed
 1968 OK 47, 440 P.2d 694, JOHNSTON v. JOHNSTON
Discussed
 1995 OK 5, 890 P.2d 925, 66 OBJ 338, Thielenhaus v. Thielenhaus
Discussed
 2003 OK 68, 73 P.3d 878, MERRITT v. MERRITT
Discussed
 2004 OK 45, 92 P.3d 695, HOUGH v. HOUGH
Discussed
 2007 OK 65, 175 P.3d 340, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COMBS
Discussed
 2012 OK 114, 298 P.3d 533, SMITH v. VILLAREAL
Discussed at Length
 2016 OK 95, 382 P.3d 1020, CHILDERS v. CHILDERS
Discussed at Length
 1999 OK 59, 983 P.2d 438, 70 OBJ 1960, In the Matter of the Estate of Estes
Discussed
 1999 OK 83, 991 P.2d 536, 70 OBJ 3260, Larman v. Larman
Discussed
 1983 OK 46, 665 P.2d 1179, Chastain v. Posey
Discussed
Title 6. Banks and Trust Companies
 Cite
Name
Level

 6 O.S. 901, Deposits In Name of Two or More Persons - "Payable on Death" Accounts - Change in Designation of Beneficiary
Cited
Title 42. Liens
 Cite
Name
Level

 42 O.S. 121, Removing or Appropriating Grain - Penalty
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA