2016 OK 95

**Tracy Way CHILDERS,**
Petitioner/Appellee,

v.

**Kelly Joe CHILDERS,**
Respondent/Appellant.

No. 112,497

Supreme Court of Oklahoma.

FILED SEPTEMBER 20, 2016

Paul E. Blevins and Emily B. McLean, Pryor, Oklahoma, for Appellee.

Christopher B. Lyons, Pryor, Oklahoma, for Appellant.

KAUGER, J.:

¶1 The three dispositive questions presented are whether: 1) the trial court's valuation of the parties' marital estate was against the clear weight of evidence; 2) the trial court's distribution of the parties' marital estate was just and reasonable; and 3) the trial court's order that each party pay its own attorney fees was an abuse of discretion. We hold that the trial court's valuation of the

parties' marital estate was not against the clear weight of evidence, that its distribution of the parties' marital estate was just and reasonable, and that its order that each party pay its own attorney fees was not an abuse of discretion.

## FACTS

¶ 2 The Petitioner/Appellee, Tracey Childers (wife) and the Respondent/Appellant, Kelly Childers (husband) were married in Tulsa, Oklahoma, on May 13, 1996. They have two daughters, born in 1998, and 2001, respectively. The wife received her medical degree in 1994, and then completed a residency in ear, nose, and throat. Throughout their marriage, the couple started a number of businesses, most of which were related to the wife's medical practice or provided other medical services.[1] The husband oversaw these businesses from their home. Beginning in 2001, the husband's management of the businesses was his sole source of employment.

¶ 3 The wife filed for divorce on December 16, 2011, in the District Court of Cherokee County, Oklahoma. At a temporary order hearing on January 10, 2012, the husband made an oral motion for the appointment of a receiver to oversee the parties' eleven different business entities, and the wife agreed to pay temporary spousal support to the husband in the amount of $7,000 a month. The receiver, Tim Watts (receiver), took over the management and handling of the couples' businesses. The receiver was a retired public accountant, and had known the parties for several years. He had prepared their personal taxes and had discussed the establishment of some of the businesses with the husband.

¶ 4 Prior to trial, the husband began working for *Water is Life*, a humanitarian organization that helps provide fresh water to impoverished communities. Beginning September 1, 2012, the husband would be gone roughly every other month to assist

the organization. Much of his work was to take place in Africa. Because he received no compensation from *Water is Life* and had no other form of employment, the wife was his sole financial support. On August 21, 2012, the wife filed a motion to modify the temporary spousal support, requesting that it be reduced to $2,500.00 a month. She practiced full time as a physician, and asked that the spousal support be reduced so that she could hire the additional help needed to care for their children while the husband was out of the country. The husband admitted that he would be out of the country doing missionary work, but insisted that it would not have any impact on what the wife was already financially contributing.

¶ 5 A trial on the divorce merits was held on December 6–7, 2012. The receiver, husband, and wife provided the entirety of the testimony. The vast majority of testimony related to valuation of the businesses came from the receiver. As part of his receivership, he conducted an extensive investigation into all of the businesses. He determined the outstanding accounts payable and receivable, as well as the debt encumbered. He prepared profit and loss statements for the major entities, and determined their total assets, liabilities, and equity.

¶ 6 The profit and loss statements, as well as the assets and liabilities sheets, were created using the "accrual basis" method of accounting. Accrual basis is a method that registers debits and credits when they arise, rather than when the income is actually received or the expense is actually paid. The receiver also had the couple's real property and airplanes appraised.[2] Both parties called the receiver to testify, and the husband did not object to the evidence presented by the receiver as to the values of the businesses. During the husband's testimony, he presented no evidence, other than his own statements, as to what he believed the values of the businesses to be.

---

1. Tracey Way Childers, DO, PC; Green Country Allergy Clinic; Reflections Medical Day Spa; Tahlequah Ear Nose & Throat; Childers Medical Group Urgent Care LLC (Tahlequah); Childers Medical Group Urgent Care LLC (Wagoner); Pillar Investments LLC; Emerge Medical Day Spa LLC; Childers Medical Group Properties LLC; Childers Medical Group Billing LLC; Childers Medical Group Management LLC.

2. Appraisals were submitted for Wagoner Urgent Care, CMG Properties' vacant lot, the marital residence, the Tahlequah medical building, the three lake lots, the airplane hangar, the Beechcraft airplane, and the Cessna airplane.

¶ 7 The trial court entered a Decree of Dissolution of Marriage on November 7, 2013. It awarded the wife assets with equity in the amount of $519,020 [3] and the husband assets with equity in the amount of $177,942.[4] It also awarded the husband alimony in lieu of property in the amount of $150,000. The parties assumed the debt associated with the property awarded to them. The decree also ordered the parties to pay their own attorney fees.

¶ 8 The husband appealed on January 21, 2014, after his Motion to Reconsider was denied. He asserted four points of error. He argued that the trial court erred in determining the value of the businesses and property, in not awarding him any support alimony, and in denying his request for attorney fees. He also argued that its distribution of the marital estate was inequitable.

¶ 9 The Court of Civil Appeals affirmed in part, reversed in part, and remanded. It concluded that the trial court's valuation of the marital estate was against the clear weight of evidence and remanded for the trial court to receive evidence of the "fair market values" of the marital businesses. It affirmed the trial court's denial of support alimony to the husband, and ordered the trial court to rule on the husband's request for attorney fees on remand. We granted certiorari on January 19, 2016.

## I.

## THE TRIAL COURT'S VALUATION OF THE MARITAL ESTATE WAS NOT AGAINST THE CLEAR WEIGHT OF EVIDENCE.

■ ¶ 10 The husband argues that the trial court erred because it used an "accrual basis" method of accounting to determine the value of the marital assets. This is the method used by the receiver. It resulted in the profit and loss statements, as well as the assets and liabilities sheets, which were used by the trial court to value the parties' businesses. According to the husband, this method does not reflect the businesses' fair market values.

¶ 11 The wife argues that the trial court did not err in relying on the receiver's testimony. It is her position that the receiver's background and experience lent credibility to his testimony and that the use of profit and loss statements is standard in the profession. She also notes that the husband has failed to identify any alternative accounting method.

■ ¶ 12 A trial court's valuation of a marital estate will not be disturbed unless it is against the clear weight of evidence,[5] and our cases demonstrate considerable deference to a trial court's valuation of marital assets in a divorce.

¶ 13 In Johnson v. Johnson, 1983 OK 117, ¶ 1, 674 P.2d 539, a wife appealed a divorce decree, alleging that the trial court erred in its valuation of corporate stock. The stock was awarded to the husband, and she contended that it was undervalued. According to the wife, the trial court erred by not using the "net asset," "market," or "investment earning" methods for stock valuation. This Court affirmed the trial court, holding that "[t]he trial judge could have selected any one of several methods of computing the value of

---

3. The wife was awarded: Tracey Way Childers, DO, PC; Green Country Allergy Clinic; Reflections Medical Day Spa; Childers Medical Group Urgent Care LLC (the entity and building in Tahlequah); Childers Medical Group Urgent Care LLC (the entity and building in Wagoner); Childers Medical Group Billing LLC, Childers Medical Group Management LLC; a Disney timeshare; a Lexus vehicle; the marital residence; $40,000 cash from the Tahlequah Urgent Care; and personal property.

4. The husband was awarded: Pillar Investments LLC; the Beechcraft airplane; the Cessna airplane; the airplane hangar; Childers Medical Group Properties LLC; one lot in Cookson, Oklahoma; two lots in Hulbert, Oklahoma; a Ford vehicle; a Nissan vehicle; four Ameritrade accounts; $40,000 cash from the Tahlequah Urgent Care; and personal property.

5. Ford v. Ford, 1988 OK 103, ¶ 6, 766 P.2d 950; Johnson v. Johnson, 1983 OK 117, ¶ 15, 674 P.2d 539; Carpenter v. Carpenter, 1983 OK 2, ¶ 24, 657 P.2d 646.

the stock."[6] The value was based on a financial report presented at trial. Although the methods suggested by the wife may have resulted in a different valuation, the trial court's decision was not against the clear weight of evidence and consequently affirmed.

¶ 14 Similarly, in Carpenter v. Carpenter, 1983 OK 2, ¶ 32, 657 P.2d 646, a wife appealed a divorce decree, asserting that the trial court erred by using the "book value" of stock rather than the "earnings value." Again, we affirmed the trial court. In Ford v. Ford, 1988 OK 103, ¶ 6, 766 P.2d 950, we affirmed a trial court's valuation of a law practice even though acknowledging that it was based to some extent on "speculation" that occurred during testimony at trial.

■ ¶ 15 In the present case, the "accrual basis" method used by the receiver and accepted by the trial court was appropriate. In Oklahoma, "the net worth of marital property may be determined by subtracting the liabilities from the assets."[7] The receiver testified that his profession is based on profit and loss statements. In fact, the husband testified that he uses profit and loss statements as well. The following exchange took place when the husband was being questioned by his own counsel:

Q: So what kind of protocol or procedure do you go through in terms of being able to get a sense about an ongoing business as far as its value is concerned for purposes of either buying or selling?

A: What is coming in the door as far as cash. What is coming in and what is actually having to go out. A profit and loss is what I use extensively, in addition to other factors.

¶ 16 Additionally, the husband did not object to the evidence presented by the receiver. He had the opportunity to cross-examine the receiver when the receiver was called by the wife. The husband then called the receiv-

er in his case in chief. There, the receiver was questioned by the husband and then redirected twice. If the husband had an alternative method to valuing the businesses, he could and should have presented it. He had a full and fair opportunity to present evidence as to the fair market value of the businesses. However, he did not provide any evidence, other than his own statements, as to their value.

¶ 17 In Honeywell v. Honeywell, 1959 OK 163, ¶ 1, 344 P.2d 589, a wife appealed a divorce decree, alleging that the trial court erred in determining the value of a farm and livestock that the husband had acquired prior to marriage. The only evidence of the value of the property in question was provided by the husband at trial. This Court affirmed the trial court's decision, noting that the wife "offered no evidence to rebut defendant's (husband's) valuation of such property."[8]

■ ¶ 18 For whatever reason, the husband chose not to call another expert and chose not to object to the evidence presented by the receiver. This does not mean that the trial court erred in its determination. The trial court is ideally situated to assess the credibility of witnesses.[9] It determined that an accountant with decades of experience and a history with the businesses at issue was a credible witness. Because the trial court's valuation of the marital estate was not against the clear weight of evidence, it will not be disturbed.

## II.

### THE TRIAL COURTS'S DISTRIBUTION OF THE MARTITAL ESTATE WAS JUST AND REASONABLE.

■ ¶ 19 The husband argues that the trial court's distribution of the marital estate was unjust because it left the wife with a substantial majority of the overall marital estate. According to the husband's calcula-

6. Johnson v. Johnson, 1983 OK 117, ¶ 15, 674 P.2d 539.

7. Teel v. Teel, 1988 OK 151, ¶ 6, 766 P.2d 994 (citing Casey v. Casey, 1948 OK 111, ¶ 8, 200 Okla. 313, 193 P.2d 567).

8. Honeywell v. Honeywell, 1959 OK 163, ¶ 6, 344 P.2d 589.

9. White v. Adoption of Baby Boy D., 2000 OK 44, ¶ 36, 10 P.3d 212; Perry v. Perry, 1965 OK 160, ¶ 5, 408 P.2d 285.

tions, he received 38.72% of the marital estate, while the wife received 61.28%.

¶20 The wife argues that even though she received a larger portion of the marital estate than the husband, it was not an inequitable distribution. She contends that it was not inequitable because she was responsible for generating most of the revenue, and because she received a greater amount of the marital debt.

¶21 When a divorce is granted, the court shall distribute jointly-acquired property by making

> [S]uch division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be paid such sum as may be just and proper to effect a fair and just division thereof.[10]

A trial court has wide latitude in determining the division of jointly-acquired property in a divorce proceeding,[11] and its distribution of a marital estate will not be disturbed absent an abuse of discretion or a finding that the

decision is clearly contrary to the weight of evidence.[12]

¶22 The words "just" and "reasonable" in 43 O.S. 2012 § 121 [13] are equivalent to "equitable" and not synonymous with "equal."[14] The division of a marital estate does not necessarily need to be equal in order to be just and reasonable.[15] In Irwin v. Irwin, 1966 OK 146, ¶15, 416 P.2d 853, a husband sought to overturn a divorce decree, alleging that the division of marital property was unjust. There, the wife was awarded $5,200 equity in their $10,000 home, along with all of the furnishings. After reiterating the proposition that a just division does not have to be an equal division, the decree was affirmed. This Court also noted that the wife's

> efforts played a part in the accumulation of the parties' equity in the home and more specifically, that had it not been for her earnings as a teacher, the parties would not have been able to meet their household and essential living expenses, especially during the periods of defendant's (husband's) unemployment.[16]

---

**10.** Title 43 O.S. 2012 § 121 provides in part:

A. When a dissolution of marriage is granted, the decree shall restore:

1. To the wife her maiden or former name, if her name was changed as a result of the marriage and if she so desires;

2. To the husband his former name, if his name was changed as a result of the marriage and if he so desires.

B. The court shall enter its decree confirming in each spouse the property owned by him or her before marriage and the undisposed-of property acquired after marriage by him or her in his or her own right. Either spouse may be allowed such alimony out of real and personal property of the other as the court shall think reasonable, having due regard to the value of such property at the time of the dissolution of marriage. Alimony may be allowed from real or personal property, or both, or in the form of money judgment, payable either in gross or in installments, as the court may deem just and equitable. **As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall, subject to a valid antenuptial contract in writing, make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be paid such sum as may be just and proper to**

**effect a fair and just division thereof. The court may set apart a portion of the separate estate of a spouse to the other spouse for the support of the children of the marriage where custody resides with that spouse.** (Emphasis supplied).

\* \* \*

**11.** Colclasure v. Colclasure, 2012 OK 97, ¶16, 295 P.3d 1123; Teel v. Teel, 1988 OK 151, ¶7, 766 P.2d 994; Carpenter v. Carpenter, 1983 OK 2, ¶24, 657 P.2d 646.

**12.** Colclasure v. Colclasure, 2012 OK 97, ¶16, 295 P.3d 1123; Teel v. Teel, 1988 OK 151, ¶7, 766 P.2d 994; Kiddie v. Kiddie, 1977 OK 69, ¶3, 563 P.2d 139.

**13.** Title 43 O.S. 2012 § 121, see note 10, supra.

**14.** Teel v. Teel, 1988 OK 151, ¶5, n.6, 766 P.2d 994; Stansberry v. Stansberry, 1978 OK 77, ¶11, 580 P.2d 147; Stuart v. Stuart, 1967 OK 136, ¶15, 433 P.2d 951.

**15.** Colclasure v. Colclasure, 2012 OK 97, ¶16, 295 P.3d 1123; Gray v. Gray, 1996 OK 84, ¶15, 922 P.2d 615.

**16.** Irwin v. Irwin, 1966 OK 146, ¶15, 416 P.2d 853.

¶ 23 In the present case, the division of the marital estate was not only equitable, it was virtually equal. Considering his concern with accounting methodology, the husband used a creative process to conclude that he received only 38.72% of the marital estate. The value of the marital property awarded to the wife was $519,020, and the value of the marital property awarded to the husband was $177,942. The wife was also ordered to pay the husband alimony in lieu of property in the amount of $150,000. To arrive at the 38.72% figure, the husband added $150,000 to the value of assets that he received, but did not subtract $150,000 from the value of assets that the wife received. However, an equitable division of property can occur by distributing the property in kind or by awarding it to one party and awarding compensation to the other.[17] Once the alimony in lieu of property is properly included, the husband received $327,942, and the wife received $369,020. That is to say, the husband received 47.05% of the marital estate, and the wife received 52.95%.

¶ 24 The trial court's decision was also reasonable as a practical matter. It awarded the wife, a practicing physician, the businesses that provide medical services. The wife's medical license was required for a number of these businesses, and her personal practices were physically located in some of the buildings. At trial, the court noted its concern about the potential problems that may arise if the husband were to become the wife's landlord after a contested divorce.

¶ 25 There was also an issue relating to debt allocation. The marital property awarded to the wife was encumbered with debt in the amount of $2,239,662.00, and she was personally subject to contingent liability on that debt. The husband indicated a desire to refinance and relieve her of that liability if he were awarded the properties. But at the time of trial, the husband testified that he had around $1,500 in his bank account. He would be out of the country roughly every other month for the next five to ten years working in a position that provided him no income. It was, at the very least, an open question as to whether he would be able to refinance and remove the wife from the notes. The trial court's division of the marital estate was equitable and consequently the division was just and reasonable.

### III.

### THE TRIAL COURT'S ORDER THAT EACH PARTY PAY ITS OWN ATTORNEY FEES WAS NOT AN ABUSE OF DISCRETION.

¶ 26 The husband requests that the cause be reversed and remanded for a hearing on the issue of attorney fees in accordance with 43 O.S. 2011 § 110(E).[18] He provides no argument as to why the trial court's order that each party pay its own fees was in error, nor does provide any factual reasons as to why he should have been awarded fees. He simply requests a hearing.[19]

¶ 27 The wife argues that because the husband did not raise the point of error regarding attorney fees in his Motion to Reconsider nor at the hearing on that motion, it was not properly preserved and cannot be considered. She also argues that even if it had been properly preserved, it is the prevailing rule in the state and nation that each party pay its own fees, and that the husband has failed to provide any reason why it should be otherwise.

¶ 28 In a divorce proceeding, the trial court "may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances."[20] The reasonableness of attorney

**17.** Teel v. Teel, 1988 OK 151, ¶ 5, 766 P.2d 994; 43 O.S. 2012 § 121, see note 10, supra.

**18.** Title 43 O.S. 2011 § 110(E) provides that:
The court may in its discretion make additional orders relative to the expenses of any such subsequent actions, including but not limited to writs of habeas corpus, brought by the parties or their attorneys, for the enforcement or modification of any interlocutory or final or-

ders in the dissolution of marriage action made for the benefit of either party or their respective attorneys.

**19.** The husband also made a separate motion for appeal-related attorney fees on August 18, 2014.

**20.** Title 43 O.S. 2011 § 110 provides in part:
D. Upon granting a decree of dissolution of marriage, annulment of a marriage, or legal

fees rests solely with the discretion of the trial court,[21] and unless a trial court abuses its discretion, its decision will not be overturned.[22] A trial court abuses its discretion when it makes a decision based on an erroneous conclusion of law or when its decision has no rational basis in evidence.[23]

¶ 29 In determining whether to award attorney fees, the trial court should consider what is just and equitable after taking into account the means and property of each party.[24] A party should be awarded attorney fees only if they qualify for the benefit through a judicial balancing of the equities.[25] In Thielenhaus v. Thielenhaus, 1995 OK 5, ¶ 19, 890 P.2d 925, the "courthouse folklore" that the principal spousal provider has a duty to pay attorney fees in divorce proceedings was described as a **"hard-to-repress legal myth."** (Emphasis in original). In Hickman v. Hickman, 1997 OK 49, ¶ 15, 937 P.2d 85, the wife requested appeal-related attorney fees, and her motion was denied. This Court concluded that because each party received an almost equal share of a substantial marital estate, each party should pay its own appeal-related fees.

¶ 30 In the present case, the trial court ordered that the parties pay their costs and attorney fees out of the $40,000 that each received from the Tahlequah Urgent Care.[26] An accounting of the means and property of each party does not tip the balance of equities in the husband's favor. He testified that he has high-level managerial and entrepreneurial skills. He also has a life insurance license, long-term health care license, and a securities license. The husband admits to being very employable, but has voluntarily chosen not to pursue gainful employment. As in Hickman, supra, each party received an almost equal share of a sizable marital estate. The trial court did not abuse its discretion, and consequently its decision will not be overturned.

## CONCLUSION

¶ 31 The facts of this case provide no justification for interfering with a trial court's latitude in valuing and distributing a marital estate. Both parties had a full and fair opportunity to hire experts, present evidence, and elicit testimony to establish the value of their business entities and property. One party failed to do so. Regardless, the trial court's decisions were legally sound.

¶ 32 The trial court's valuation of the marital estate was not against the clear weight of evidence because it was based on essentially all of the evidence that was presented. This evidence was presented by a credible professional who had experience with the businesses in question. The witness was questioned at length by both parties, and the evidence presented was not objected to by either party. Additionally, the trial's court distribution of the marital estate was just and reasonable because the distribution was equitable. When the alimony in lieu of property is properly accounted for, each party is left with an almost equal amount of assets. Finally, the trial court did not abuse its discretion in ordering that each party pay its own attorney fees. A judicial balancing of the equities demonstrates that each party has both the means and property to pay their costs. Also, each party received a substantial amount of cash in the distribution that can

separation, the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances.

21. Kerby v. Kerby, 2007 OK 36, ¶ 8, 164 P.3d 1053; Merritt v. Merritt, 2003 OK 68, ¶ 20, 73 P.3d 878.

22. Spencer v. Oklahoma Gas & Elec. Co., 2007 OK 76, ¶ 13, 171 P.3d 890; McCabe v. McCabe, 2003 OK 86, ¶ 13, 78 P.3d 956; Merritt v. Merritt, 2003 OK 68, ¶ 20, 73 P.3d 878.

23. Spencer v. Oklahoma Gas & Elec. Co., 2007 OK 76, ¶ 13, 171 P.3d 890; Fent v. Oklahoma

Natural Gas Co., 2001 OK 35, ¶ 12, 27 P.3d 477; Abel v. Tisdale, 1980 OK 161, ¶ 20, 619 P.2d 608.

24. Kerby v. Kerby, 2007 OK 36, ¶ 7, 164 P.3d 1053 (citing Thielenhaus v. Thielenhaus, 1995 OK 5, ¶ 19, 890 P.2d 925); Merritt v. Merritt, 2003 OK 68, ¶ 20, 73 P.3d 878.

25. Kerby v. Kerby, 2007 OK 36, ¶ 7, 164 P.3d 1053 (citing Thielenhaus v. Thielenhaus, 1995 OK 5, ¶ 19, 890 P.2d 925); Merritt v. Merritt, 2003 OK 68, ¶ 20, 73 P.3d 878.

26. See notes 3 and 4, supra.

cover the attorney fees. Accordingly, the trial court is affirmed.

**COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT AFFIRMED.**

ALL JUSTICES CONCUR.