OPINION BY DEBORAH B. BARNES, PRESIDING JUDGE:
*315 ¶ 1 This appeal arises from the divorce proceedings of Donald W. Crawford (Husband) and Gaylene R. Crawford (Wife).[1] Husband appeals from the parties' divorce decree, as well as from the trial court's order granting, in part, Wife's request for attorney fees and costs, and from the trial court's order denying Husband's "Motion to Reconsider and Modify" the decree. Based on our review, we affirm.
BACKGROUND
The Divorce Decree
¶ 2 The parties were married in Oklahoma in 1984. They had three children during the marriage. In 2009, Wife filed a petition for divorce.
¶ 3 In the divorce decree, filed in October 2013, the trial court granted the parties a divorce on the ground of incompatibility. Two of the parties' three children had reached the age of majority prior to trial. As to the parties' one minor child, joint legal custody was awarded to the parties, and child support was awarded based on Husband having a gross monthly income of $6,200, and Wife having a gross monthly income of $2,000.[2]
¶ 4 The trial court also divided the marital property and awarded Wife support alimony. The parties owned a 35-acre tract of property where the marital home, as well as a cell phone tower, are located. The cell phone tower was constructed by a lessee as part of a lease agreement executed in 1999. That lease agreement provides that the lessee is leasing the premises "for the purpose of constructing, operating, maintaining, and repairing a facility to provide commercial mobile radio services[.]"
¶ 5 Husband, who requested that all 35 acres and the lease be awarded to him, testified at trial that the cell phone tower lease had a low value-lower than Wife's proposed value of $19,837.80-because, although the lease was a source of revenue, the lease could be cancelled by the lessee at any time (with prior written notice),[3] and he testified: "They're testing low-level satellites to replace cell phone towers, so the plans are underway to obsolete them and technology moves on like it always does." Nevertheless, Husband requested that the lease be awarded to him, and he agreed that the lease paid $3,967.50 per year and that five years remained on the lease.[4]
¶ 6 As to the value of the real property, Wife asserted the 35 acres (i.e., the marital home and acreage) was worth $250,000. Regarding the marital home, Wife testified it is a "very nice," custom-built, four-bedroom, two-bath home. She also testified there is a barn on the property. Husband, although requesting an award of the property, asserted it had a lower value, plus mortgage debt. He further testified the presence of the cell phone tower made the real property less attractive to potential buyers. He asserted the real property had a market value of $219,000, and an equity value of $129,936.
¶ 7 Ultimately, the trial court awarded Husband "[a]ll right, title and interest in the proceeds from the cellular phone tower *316 lease" from August 14, 2009-the date Wife filed her petition for divorce-until April 25, 2013, totaling $14,878. "[A]s of April 25, 2013," however, all right, title and interest in the proceeds from the cell phone tower lease were awarded to Wife.
¶ 8 Moreover, Husband was awarded the 35 acres, including the marital residence, but subject to Wife being awarded "[a] 2-acre plat of land from the [35-acre tract] on which the marital residence is located, to include the area covered by the cellular phone tower lease." Husband was also granted the marital residence and acreage "subject to the outstanding mortgage indebtedness thereon[.]" Husband was ordered to pay marital debt totaling $94,912.94. The trial court explained from the bench that it did not adopt Wife's valuation of the property at $250,000, nor did it adopt Husband's $219,000 valuation; instead, it adopted a value between these two values-i.e., about $15,000 to $20,000 less than Wife's valuation.
¶ 9 Husband was also awarded the IRA account with an agreed-upon value of $73,175, as well as the parties' 25% ownership interest in the business for which Husband was working, an interest which he valued at $25,000, but which Wife valued at $36,000. The trial court explained from the bench that it was accepting the value of $36,000.
¶ 10 In turn, Wife was awarded a "money judgment against Husband in the amount of $150,000 representing alimony in lieu of property division[.]" Husband was also ordered to pay Wife $13,941
for Wife's share of the parties' 2008 joint income tax refund in the amount of $8,941 and for reimbursement of the value of Wife's vehicle Husband traded in for a vehicle owned by [the business for which he works] in the amount of $5,000, which the Court finds Husband improperly converted to his own use.
¶ 11 The trial court also divided the personal property items of the parties, such as boats, tools and furniture, the total value of which is not insubstantial. According to Wife, the total value of the parties' marital personal property of this kind equals $136,707. As to items ultimately awarded to Husband, Wife presented evidence that, for example, a certain "M8200 Kubota" tractor had a value of $26,172 (though Husband valued it at $11,708), and that two Harley Davidson motorcycles had values of $18,725 and $8,955 (though Husband valued them at $15,605 and $3,940). Husband was also awarded personal property items such as two trailers, two boats (one a mere "aluminum boat" which she and Husband valued at $300, and the other a "Pro Craft" boat which she and Husband valued at $8,790), a dirt bike, and miscellaneous farm and hand tools (which Wife valued at $13,380) such as an air compressor, saws and a chain saw, ladders, a "Craftsman roll around tool box w/tools," and various rifles.
¶ 12 Wife arrived at her valuations using, among other things, various online valuation guides such as "NADA Guides," according to which the total value of the marital personal property which was both in Husband's possession and awarded to Husband by the trial court equals approximately $125,000. However, the trial court stated at the end of trial that "a lot of [Wife's] valuations were a little bit high." On the other hand, the trial court also stated "that a lot of [Husband's] values on the property that he wants to keep are extremely low." Consequently, the trial court "approximated about a $30,000 discount [to Wife's total valuation] of the personal property." The value of the personal property items of this kind (i.e., vehicles, tools, guns, etc.) awarded to Wife was, in comparison to the items awarded to Husband, minimal.[5] The parties were also awarded equal portions (50% each) of a certain mineral interest with an agreed-upon value of less than $12,000.[6]
¶ 13 The trial court explained from the bench that the total "share of the marital estate [awarded to Husband] is $375,000."
*317 The court explained that this amount constitutes his net award after payment of the marital debt he was ordered to pay. After further deducting the amount of $150,000, which Husband was ordered to pay to Wife as property division alimony, Husband was awarded the equivalent of $225,000. Indeed, Husband admits on appeal that "[t]he marital assets awarded to [me] had a net value of $225,000[.]"
¶ 14 On the other hand, the only significant items awarded to Wife were the cell phone tower lease, valued by Wife at $19,837.80; the two acres, which Wife valued at $4,000; and the 50% share of the mineral interest, valued at $5,978. Using the highest estimates possible based on the evidence presented at trial, Wife was awarded the equivalent of less than $40,000 total in marital property. Even when adopting this sum, and after adding the $150,000 and $13,941 payments to Wife from Husband, Wife was awarded the equivalent of approximately $204,000 of the marital estate's net value.
¶ 15 Husband was further ordered to pay support alimony to Wife in the total amount of $45,000, to be paid to Wife over the course of sixty months at the rate of $750 per month. However, the alimony award is not contested on appeal.
Post-Decree Proceedings
¶ 16 In November 2013, within thirty days of the divorce decree, Husband filed an appeal. Also in November 2013, Wife filed a motion for attorney fees and costs and Husband filed a motion to reconsider/modify the decree.[7] Husband's motion was filed within thirty days of, but more than ten days after, the date of filing of the divorce decree.
¶ 17 In Wife's motion, she sought an award of attorney fees and costs under 43 O.S. 2011 § 110(D), which provides that "[u]pon granting a decree of dissolution of marriage ... the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances." Wife asserted, among other things, that,
[t]hroughout the litigation, [Husband] engaged in a pattern of dilatory conduct that *318 included multiple instances of refusals to cooperate in discovery, appraisals and evaluations in an attempt to bully and intimidate [Wife], to wear her down emotionally and financially, and to deprive [her] of her rightful share of the marital estate.
¶ 18 She further asserted that Husband's "bad conduct" in these proceedings required Wife to file "protective orders, motions to compel, contempt citations and motions for sanctions." Wife also stated that the trial court "found that [Husband's] income was more than three times that of [Wife]." For these reasons, Wife asserted it was just and proper that Husband pay all of her attorney fees ($25,535), costs ($365.10) and expert fees ($7,873.45), for a total of $33,733.55.[8]
¶ 19 On July 24, 2015, a hearing was held on Wife's motion for attorney fees, and, in an order filed in August 2015, the trial court granted Wife's motion in part, awarding Wife attorney fees and costs in the amount of $7,500.
¶ 20 In the motion to reconsider/modify, Husband requested that the trial court reconsider its valuation of Husband's 25% interest in the business for which he works. Husband asserted that the trial court "relied upon, in part," a business valuation which utilized the "capitalized excess earnings method" of determining value. Husband asserted this method "has been specifically rejected by the Oklahoma Supreme Court" for business valuations in divorce actions. Husband also sought reconsideration of the trial court's decision to award Wife a 2-acre tract of the 35-acre tract of marital property. Although a hearing was held on Husband's motion in April 2014, at which time the trial court entered a Minute Order partially resolving Husband's motion, the trial court did not finally determine Husband's motion until its order denying Husband's motion, filed in June of 2016. Prior to his motion finally being determined, Husband forwarded additional bases for modification, including evidence indicating that the value of the cell phone tower lease rose sharply less than two years after the entry of the divorce decree.
¶ 21 From the order awarding attorney fees and costs to Wife, from the order denying Husband's motion to reconsider/modify, and from the underlying divorce decree, Husband appeals.
STANDARD OF REVIEW
¶ 22 As stated by the Oklahoma Supreme Court:
A divorce suit is one of equitable cognizance in which the trial court has discretionary power to divide the marital estate. The trial court must follow the provisions of 43 O.S. [Supp. 2012] § 121 which require a fair and equitable division of property acquired during the marriage by the joint industry of the husband and wife. The trial court has wide latitude in determining what part of jointly-acquired property shall be awarded to each party. However, a marital estate need not necessarily be equally divided to be an equitable division because the words just and reasonable in 121 are not synonymous with equal. An appellate court will not disturb the trial court's property division absent a finding of abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence.
Colclasure v. Colclasure , 2012 OK 97, ¶ 16, 295 P.3d 1123 (footnotes omitted). Even more recently, the Supreme Court has stated: "A trial court has wide latitude in determining the division of jointly-acquired property in a divorce proceeding, and its distribution of a marital estate will not be disturbed absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of evidence." Childers v. Childers , 2016 OK 95, ¶ 21, 382 P.3d 1020 (footnotes omitted).
¶ 23 In addition, Husband filed a motion to reconsider/modify the decree within thirty days of (but more than ten days after) the date of filing of the divorce decree. Husband's motion is a term-time motion to vacate or modify filed pursuant to 12 O.S. Supp. 2013 § 1031.1. See Schepp v. Hess , 1989 OK 28, ¶¶ 7-8, 770 P.2d 34 ;
*319 Dorn v. Heritage Trust Co. , 2001 OK CIV APP 64, ¶ 10, 24 P.3d 886.[9] "Trial judges enjoy plenary term-time control with a very wide and extended discretion ...." Schepp , ¶ 9 (internal quotation marks omitted) (footnotes omitted). The standard of review "in this state for measuring the legal correctness of a trial court's response to a timely § 1031.1 plea is whether sound discretion was exercised upon sufficient cause shown to vacate, modify, open or correct the earlier decision, or to refuse the relief sought." Schepp , ¶ 11 (emphasis omitted) (footnotes omitted). See also Neumann v. Arrowsmith , 2007 OK 10, ¶ 9, 164 P.3d 116 (The standard of review applied to a " § 1031.1(A) motion is whether sound discretion was exercised on sufficient cause shown to vacate, modify, open, or correct the earlier decision or to refuse the relief sought.") (footnote omitted).
¶ 24 Finally, "[a] trial court's decision granting or denying an attorney's fee and costs will not be disturbed on appeal in the absence of an abuse of discretion." Finger v. Finger , 1996 OK CIV APP 91, ¶ 9, 923 P.2d 1195 (citation omitted). That is, "[t]he decision as to whether to award attorney fees in a divorce action or a related proceeding is equitable, within the discretion of the court, and involves judicial balancing of the equities." Jobe v. Jobe , 2014 OK CIV APP 101, ¶ 4, 352 P.3d 1242 (citation omitted).
ANALYSIS
I. The Award of Two Acres to Wife
¶ 25 Husband asserts the trial court erred in awarding Wife the two acres. He asserts the court should have awarded the entire 35 acres (and cell phone tower lease) to him, or the acreage awarded to Wife should have been sharply curtailed to the amount of land necessary for the cell phone tower. We address these and other arguments raised by Husband pertaining to the award of the two acres as follows.
a. Valuation of the Property
¶ 26 Husband argues, first, that although appraisals were presented as to the value of the entire 35 acres, no appraisal was presented as to the value of the two acres. In particular, Husband asserts no appraisal was presented as to the value of "that part of the property on which the cell phone tower stands." He implies that these two acres are more valuable than the rest of the property as a result of the cell phone tower and lease.
¶ 27 The evidence presented by the parties at trial separated out the value of the property from the value of the cell phone tower lease, and the values determined by the trial court for the two acres and for the cell phone tower lease are both within the range of the evidence presented by the parties. In fact, as stated by Wife in her appellate brief, "Husband's argument is truly amazing considering his testimony at trial[.]" As set forth at greater length above, Husband testified at trial that, among other things, the tower was already thirteen years old at the time of trial and would likely become an obsolete technology before long. Husband's position at trial was that the cell phone tower lease had a very low value, and that it even detracted from the value of the acreage.
¶ 28 As to the cell phone tower, the trial court adopted the highest valuation from the evidence presented, adopting a value of $19,837. The trial court's valuation of the two acres of real property was also plainly within the range of the evidence presented.[10] Husband's arguments are comparable to those presented by the husband in Childers , where the Oklahoma Supreme Court was required to point out the obvious to the husband, *320 stating: "For whatever reason, the husband chose not to call another expert and chose not to object to the evidence presented .... This does not mean that the trial court erred in its determination. ... [T]he trial court's valuation of the marital estate was not against the clear weight of evidence, it will not be disturbed." 2016 OK 95, ¶ 18, 382 P.3d 1020.
¶ 29 The trial court's valuation of the lease and the two acres is supported by the evidence presented by the parties at trial; indeed, the trial court adopted a higher valuation of the two acres and lease than it would have adopted had it found credible Husband's testimony regarding the cell phone tower[11] and the appraisal he offered of the acreage's value. We conclude the trial court's valuation of the two acres and of the cell phone tower lease is not clearly against the weight of the evidence.
¶ 30 Husband also argues the trial court erred in its award of the two acres to Wife because the trial court saddled Husband with the entire mortgage indebtedness on the 35 acres. Husband argues the trial court should have "surcharged" Wife's award of marital property with 2/35th of the mortgage indebtedness, or 5.7% of $89,063 (i.e., $5,076). First of all, however, "[a]n equitable division does not mean an equal division"; thus, we will not engage in a search on appeal for "perfect mathematical equality." Johnson v. Johnson , 2016 OK CIV APP 74, ¶ 28, 386 P.3d 1049 (emphasis omitted). Secondly, as Wife correctly states in her appellate brief, Husband simply assumes in this argument, without demonstration, "that the trial court failed to credit him for payment of the entire mortgage debt." Wife points out that Husband requested at trial that he be ordered to pay (and be credited for paying) all of the marital debt as part of the property and debt division, knowing, for example, that he would likely refinance. Thus, similar to Husband's argument regarding the valuation discussed above, Husband now essentially complains "that the trial court honored his request." Even though the trial court did not directly and explicitly surcharge Wife's property award with a 2/35th share of the mortgage debt on the 35 acres, this does not mean the trial court inequitably divided the marital estate. See, e.g., Childers , ¶ 24 ("The trial court's decision was also reasonable as a practical matter."). As set forth above, Husband was awarded a net value of $225,000 (approximately 52%) of the marital estate, and Wife was awarded a net value of approximately $204,000 (approximately 48%) of the marital estate. We conclude the trial court's determination regarding the marital debt is not clearly against the weight of the evidence.
b. Mortgage Indebtedness
¶ 31 At this juncture it is worth pointing out that in Husband's Brief-in-chief he fails to provide a Summary of the Record section which is required under Oklahoma Supreme Court Rule 1.11(e), 12 O.S. Supp. 2013, ch. 15, app. 1. Husband instead provides a one-page "Procedural Posture" section and a one-and-a-half page "Summary of Requested Relief" section. As a result of this failure, Husband fails to provide an overview or summary of the trial court's determinations regarding the property division necessary for a full understanding of the trial court's division of the marital property. Supreme Court Rule 1.11(e) provides, in pertinent part, as follows:
(1) Appellate Briefs. The brief of the moving party shall contain a Summary of the Record, setting forth the material parts of the pleadings, proceedings, facts and documents upon which the party relies, together with such other statements from the record as are necessary to a full understanding of the questions presented to this Court for decision . Facts stated in the Summary of the Record must be supported by citation to the record where such facts occur.
*321 (Emphasis added.) As set forth in the Standard of Review section above, it is the task of the trial court in a divorce action to equitably divide all the property acquired during the marriage by the joint industry of the parties, and the trial court has wide latitude in determining what part of jointly-acquired property shall be awarded to each party. On appeal, this Court will not disturb the trial court's property division absent a finding of abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. Husband's strategy on appeal of immediately directing this Court's attention to specific property issues without at any point placing those issues in the wider context of the entire property division effectuated by the trial court is unavailing in light of the applicable standard of review.[12]
c. Excessive Award
¶ 32 Husband argues the award of two acres to Wife was "excessive if the trial court simply wanted to award her (as it did) that portion of the property covered by the cell phone tower lease." Husband points out that the lease states it is "not to exceed an area of 100' x 100'." Husband further points out that there are 43,650 square feet in an acre, or 87,120 square feet in two acres, yet the leased premises for the cell phone tower extend only 100 feet by 100 feet, or 10,000 square feet.
¶ 33 However, Husband fails to point out that the lease itself also states that "LESSOR shall grant any and all easements as may be required by the appropriate electric and telephone companies for the purpose of serving LESSEE'S equipment. In addition, LESSOR hereby grants to LESSEE the right to use additional property contiguous to the Leased Premises during construction of the CMRS facility ...." An inference the trial court could have reasonably drawn from Husband's own testimony at trial is that cell phone tower technology is constantly changing. The trial court may well have determined that for the cell phone tower lease to remain viable and valuable in the future, ample space would be required to ensure that any modification of the tower or other construction-related projects could be performed to the facility. We conclude the trial court did not abuse its discretion by awarding more acreage to Wife than the amount strictly necessary to encompass the current tower.
¶ 34 The trial court also did not abuse its discretion in making an award that would ensure Wife would not have to interact with Husband (or request his permission or participation) for any future easements or construction that might be required for the facility. Husband might well argue that one acre, or even less, would suffice for all these purposes; however, we conclude the trial court did not abuse its discretion in awarding two acres to ensure a more substantial buffer existed between Husband's property and the tower facility. Such a buffer might prove useful to prevent any potential disputes that could arise if Husband's property line ran closer to the facility or future construction or maintenance. The trial court, and not this Court, observed the parties at trial; we conclude its determination in this regard was well within its discretion.[13]
*322 II. The Award of the Cell Phone Tower Lease to Wife
¶ 35 Husband argues the trial court should have equally divided the cell phone tower lease because
[w]hile $19,837.80 may represent a fair and equitable valuation of the ... 1999 lease agreement, there is absolutely no evidence in the record which even attempts to value the right to lease that tower upon termination or expiration of the current lease [five years in the future]. It is easy to understand why. Such an attempt at valuation would be purely speculative.
Husband argues that because the future value of the lease was speculative, each spouse should have been awarded an appropriate percentage (i.e., 50% or close to 50%) of the lease.
¶ 36 Husband's argument is unavailing. Husband asserts, in essence, that because the future market value of the cell phone tower lease (i.e., five years in the future, as he argues) was speculative at the time of trial, the trial court lacked the power to award the entire interest to one party. For Husband to be consistent, however, he would need to extend this argument to all other property items with speculative future values which were awarded, in their entirety, to one party or the other, such as, for example, the business interest and the IRA-marital property items awarded, in their entirety, to Husband. The future value of the parties' 25% interest in the business and the future value of the parties' IRA were just as speculative and tied to uncertain market forces as the future value of the cell phone tower lease at the time of trial.
¶ 37 As stated above, the trial court has wide latitude in determining what part of jointly-acquired property shall be awarded to each party, and this Court will not disturb the trial court's property division absent a finding of abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. Colclasure , 2012 OK 97, ¶ 16, 295 P.3d 1123. The trial court had ample reason to decline to award both spouses a simultaneous[14] interest in the cell phone tower lease, and we need not list all of them here. However, chief among those reasons, the trial court doubtless considered it unwise to grant to both spouses a partial interest in this lease, an award which would have required the parties to reach agreement years down the line with regard to this property. Cf. Matthews v. Matthews , 1998 OK 66, ¶ 6, 961 P.2d 831 (Unless the parties agree otherwise, "[t]he portion to be awarded each spouse should be free from the claims and domination of the other.") (emphasis omitted); see also Palmer v. Palmer , 1969 OK 182, ¶ 19, 465 P.2d 156 ("Neither should have been required to account to the other for what he or she did with the property or the income derived therefrom," and "property awarded to each should be free from the claims or domination of the other."); Lawson v. Lawson , 1956 OK 113, ¶ 0, 295 P.2d 769 (Syllabus by the Court) (Property is to "be so divided that the portion awarded to one spouse is free from the claims or domination of the other[.]"). We conclude the trial court's determination in this regard was well within its discretion.
III. The Valuation of Husband's Business Interest
¶ 38 Husband argues the trial court erred in adopting a value of $36,000 for the 25% interest described above. Husband argues the trial court, in reaching this valuation, relied upon a faulty valuation method (i.e., relied upon what a particular expert relied upon) which has been rejected, at least in some contexts, by the Oklahoma Supreme Court. Husband argues that the trial court should have adopted the value of $25,000 for the business interest and, therefore, asks this Court to "reduce the money judgment awarded to Wife by $5,500 calculated as follows: $36,000 value assigned by trial court less $25,000 value based on Husband's evidence = $11,000 x 50% = $5,500."
*323 ¶ 39 As set forth above, Husband was awarded a net value of $225,000 of the marital estate, and Wife was awarded, at most, the equivalent of approximately $204,000. Even if we were to conclude the trial court erred with regard to this small fraction of the marital estate (i.e., that it erred in overvaluing one asset by $11,000), we disagree that an adjustment of half of that value in Husband's favor is equitable. Here, adding $5,500 to Husband's award, and deducting $5,500 from Wife's award would not make the total property division more equitable, which is the fundamental concern under 43 O.S. Supp. 2012 § 121. Although we retain the power to make such a recalculation, if warranted,[15] such a recalculation would serve only to increase Husband's majority share of the marital estate from approximately 52%, to approximately 54%, and would decrease Wife's minority share of the marital estate.[16] "A divorce suit is one of equitable cognizance," Smith v. Villareal , 2012 OK 114, ¶ 7, 298 P.3d 533, and "[i]n equity cases we may generally render that judgment which the trial judge should have rendered," Thielenhaus v. Thielenhaus , 1995 OK 5, ¶ 18, 890 P.2d 925 (footnote omitted). However,
If the result is correct, the judgment is not vulnerable to reversal because the wrong reason was ascribed as a basis for the decision or because the trial court considered an immaterial issue or made an erroneous finding of fact. We are bound neither by the reasoning nor by the findings of the trial court. Whenever the law and facts so warrant, an equity decree may be affirmed if it is sustainable on any rational theory and the ultimate conclusion reached below is legally correct.
In re Estate of Bartlett , 1984 OK 9, ¶ 4, 680 P.2d 369 (footnotes omitted). Even assuming a value of $25,000 for the business interest-and, despite the trial court's statements from the bench, the divorce decree itself does not specify which value the trial court ultimately adopted-we conclude the property division is fair, just and reasonable, and we decline to increase Husband's award, and decrease Wife's award, by $5,500.[17]
IV. The 2008 Tax Refund
¶ 40 Husband proposes that the trial court made what is essentially a mathematical error in awarding Wife the entire 2008 tax refund of $8,941 (i.e., by ordering Husband to pay Wife this amount). Husband asserts that this refund "was indisputably marital property" and states that "[e]ven assuming Husband somehow 'secreted' the refund during *324 the pendency of the case, all that need be done in order to make Wife whole [was] to simply assign Husband the $8,194[18] as part of his share of the marital estate and provide Wife with an offsetting credit of 50% of that amount (i.e. $4,097)."[19]
¶ 41 As discussed above, the trial court has wide latitude in determining what part of jointly-acquired property shall be awarded to each party, and this Court will not disturb the trial court's property division absent a finding of abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. Colclasure , 2012 OK 97, ¶ 16, 295 P.3d 1123. Just as the trial court awarded, for example, the entire IRA and business interest to Husband, the trial court had the power to award Wife the entire 2008 tax refund, which Husband admits was marital property. The total property division remains fair and reasonable, and the trial court's determination does not constitute an abuse of discretion.
V. Award of Automobiles to the Parties' Children
¶ 42 The divorce decree provides "that the Honda and Chevrolet Camaro vehicles are the property of the parties' children." In Husband's Exhibit 4, he lists the Honda and Camaro as marital property items which should be assigned to Wife as part of her share of the marital estate. However, at trial, Husband agreed that, as to the Honda, his daughter drives this car, and she drives it to work or school every day. Nevertheless, he asserted this car "was not intended for a gift" to his daughter. When questioned, "Are you honestly testifying to the Court that the Honda is not [your daughter's] vehicle," Husband responded: "I'm testifying that we bought it together and it's something that is an asset that we owned and acquired together, like everything else." Wife was more straightforward; she testified, "The Honda Accord is my daughter's[.]" Similar testimony was presented regarding the Camaro, though Wife testified, "The Camaro is my son's vehicle."
¶ 43 As noted above, "[t]he trial court is confronted with the parties themselves and the witnesses. It is better able to determine a controverted issue of fact than is this court, which, of necessity, is permitted only to consider the dry, printed words appearing in the record." Perry , 1965 OK 160, ¶ 5, 408 P.2d 285. "The trial court is better able to determine controversial evidence by its observation of the parties, the witnesses, and their demeanor." Foshee , 2010 OK 85, ¶ 20 n.13, 247 P.3d 1162 (citations omitted). We conclude the trial court did not err in determining these two vehicles should not be assigned to either Wife or Husband as part of their share of the marital estate.
VI. Evidence of Increased Value of the Lease After the Decree
¶ 44 Husband filed his motion to reconsider/modify within thirty days of the filing of the divorce decree, requesting that the trial court modify the decree. As stated above, although a hearing was held on Husband's motion in April 2014, at which time the trial court entered a Minute Order partially resolving Husband's motion, the trial court did not finally determine Husband's motion until its order denying Husband's motion was filed in June 2016.
¶ 45 Prior to the trial court finally determining his motion, Husband attempted to supplement his motion with a letter received by Wife almost two years after the filing of the divorce decree. As stated by Husband in his supplemental appellate brief, in a letter dated July 16, 2015, "American Tower Corporation offered to buy out the [cell phone tower] lease [from Wife] for $275,000, or continue paying monthly rental (which at [that] time ... was $1,545 a month)." Thus, Husband argued that because evidence subsequently materialized that the market value of the lease rose sharply within one to two years after the entry of the divorce decree, *325 the trial court should modify the decree under its term-time authority.
¶ 46 We disagree with Husband that a § 1031.1 motion, filed within thirty days of a divorce decree, can be used to modify or vacate a portion of the decree based on evidence of market fluctuations occurring long after the filing of such a motion (albeit prior to the motion being finally decided), and long after the underlying trial and decree. Although, within a limited time frame, the trial court has very wide and extended discretion to vacate or modify a final order, and the trial court may exercise its term-time power beyond the thirty-day window if a § 1031.1 motion is timely filed by a party, term-time authority does not mean that, once a § 1031.1 motion is timely filed, a final order is perpetually subject to modification based on later fluctuations in the market value of marital assets.
¶ 47 The trial court's exercise of its term-time authority under § 1031.1 (to vacate, modify, open, or correct a recently entered final order) is not restricted to any specific grounds, and "[a] trial court may exercise its term-time authority with a very wide and extended discretion that is almost unlimited." Neumann v. Arrowsmith , 2007 OK 10, ¶ 9, 164 P.3d 116 (footnote omitted). However, as the name "term-time authority" suggests, it is not unlimited temporally. Rather, "[t]rial courts retain plenary control, or 'term-time authority,' over terminal decisions for a limited time period." Id. (footnote omitted). Trial courts were traditionally limited to vacating or modifying their final orders only "during the term at which they [were] rendered[.]" Montague v. State ex rel. Comm'rs of Land Office of Okla. , 1939 OK 190, ¶ 0, 184 Okla. 574, 89 P.2d 283 (Syllabus by the Court). Today, under § 1031.1, the term-time authority allows the trial court to modify or vacate a judgment or decree within thirty days of the decision, and, "once invoked during the thirty-day period, the trial court may exercise authority over its judgment or decree after the thirty-day period expires." In re Estate of Hughes , 2004 OK 20, ¶ 12, 90 P.3d 1000 (citation omitted). Nevertheless, the trial court may only modify or vacate its earlier decision "upon sufficient cause shown." Schepp , 1989 OK 28, ¶ 11, 770 P.2d 34 (footnote omitted).
¶ 48 Although the trial court, when exercising its term-time authority, is not limited to any particular statutory grounds, the trial court is still limited to exercising its authority upon sufficient cause shown and, thus, must exercise its discretion within the bounds of the evidence actually presented or, at the very least, in existence, at the time of the decision.[20] Husband's position at trial was that the lease had an even lower value than that proposed by Wife, and the trial court adopted Wife's value. We conclude the trial court did not abuse its wide discretion in denying Husband's motion to reconsider/modify.[21]
VII. Award of Attorney Fees and Costs to Wife
¶ 49 Husband asserts the trial court abused its discretion in awarding Wife attorney fees. As set forth above, Wife asserted it was just and proper that the trial court order Husband to pay Wife's attorney fees ($25,535), costs ($365.10) and expert fees ($7,873.45), for a total award of $33,733.55. In its order filed in August 2015, the trial court granted Wife's motion in part, awarding her *326 attorney fees and costs in the amount of $7,500.
¶ 50 Husband asserts that an award of fees and costs in this proceeding is not appropriate. He asserts that a consideration of what is "just and equitable [,] after taking into account the means and property of each party," reveals the $7,500 award to be an abuse of discretion because Wife "had the means and property to pay her own fees" and Wife "did not present any evidence at the evidentiary hearing of any alleged bad conduct by Husband." Husband asserts that "the evidence established that Wife was awarded marital property valued at substantially more than the marital property awarded to Husband."
¶ 51 However, as set forth above, Husband was awarded approximately 52% of the marital estate ($225,000 net value), and Wife was awarded approximately 48% of the marital estate ($204,000 net value). Furthermore, the trial court entered its award in light of the "permanent diminution" in Wife's "ability to earn income for the rest of her life as compared to [Husband]."[22] The court explained that "[y]ou don't start at the age of 50 or 55 or 60 working on a PhD to earn income for the rest of your life."
¶ 52 As previously noted in this Opinion, the court also stated that during the proceedings, Husband could "hardly tell the truth when it's just right in front of him." The court stated that Husband "has difficulty telling the truth. And that's been the most laborious part of this trial is just constantly swimming upstream to get to the truth when the truth ought to just flow with ease. And-and he's had every opportunity."
¶ 53 "When considering the issue of attorney fees in a divorce action, the trial court should consider the parties and all of the circumstances in the case, including the means and property of the respective parties under the property division." Jobe v. Jobe , 2014 OK CIV APP 101, ¶ 17, 352 P.3d 1242 (citation omitted). "Before such an order will be reversed, it must clearly appear that the trial court abused its discretion." Id. (citation omitted). As described in Finger v. Finger , 1996 OK CIV APP 91, ¶ 14, 923 P.2d 1195, the basic standard for a 43 O.S. § 110(D) award is an equitable one which is "just and proper under the circumstances." Finger continues:
In considering what is just and proper under the circumstances, the court in the exercise of its discretion should consider the totality of circumstances leading up to, and including, the subsequent action for which expenses and fees are being sought. Such circumstances should include, but not be limited to: ... whether either party unnecessarily complicated or delayed the proceedings, or made the subsequent litigation more vexatious than it needed to be; and finally, the means and property of the respective parties.
1996 OK CIV APP 91, ¶ 14, 923 P.2d 1195.
¶ 54 Both of these factors-unnecessary complication of the proceedings and the resources of the parties-support the trial court's partial award in favor of Wife. In fact, given both the means and property of the parties and the complications added to the proceedings by Husband (relative to those added by Wife), it appears Husband was successful in terms of convincing the trial court to award Wife only a small fraction of her requested fees and costs. That is, Husband does not contest the total lodestar amount sought by Wife, and the trial court's award of $7,500 constitutes only about 22% of Wife's total requested fees and costs. We conclude the trial court did not abuse its discretion in this regard.
CONCLUSION
¶ 55 We affirm the parties' divorce decree, as well as the trial court's order awarding attorney fees and costs to Wife in the amount of $7,500, and the trial court's order denying Husband's "Motion to Reconsider and Modify" the decree. The trial court did not abuse its discretion, and its determinations are not clearly against the weight of the evidence.
¶ 56 AFFIRMED .
THORNBRUGH, V.C.J., and WISEMAN, J., concur.

Wife was restored to her maiden name, Gaylene R. Brown, in the divorce decree.

Issues related to child custody and support are not raised on appeal.

The lease agreement states that lessee "shall have the right to terminate this Agreement at any time with one (1) year's prior written notice."

We note that the lease agreement sets forth a twenty-year term and further provides that the first five years "shall have an annual rental" of $3,000, the next five years a rental of $3,450 per year, the next five years a rental of $3,967.50 per year, and the final five years a rental of $4,562.62.

We note that the decree specifically awards to Wife the ".357 revolver," which she valued at $1,000, and the "Potbelly stove," which she valued at $100. Wife also received various other items of similar or lesser value.

A few other less significant items were also distributed, such as a checking account containing $414.23 to Wife.

In April 2014, Husband filed in the Oklahoma Supreme Court an "Unopposed Motion for Stay of Briefing Schedule or for Extension of Time to File Brief-in-Chief." Husband stated, among other things, as follows:
On November 4, 2013, [Husband] timely filed his Motion to Reconsider and Modify Decree ... pursuant to 12 O.S. § 1031.1. While such Motion did not toll the deadline for the filing of this appeal, it did continue the trial court's jurisdiction to resolve certain issues which were appealed. The [trial court] has yet to hear and decide [Husband's] Motion to Reconsider.
In an Order of the Supreme Court filed on May 1, 2014, the Supreme Court acknowledged that "[t]he motion to reconsider/modify was filed on November 4, 2013, and is still pending"; nevertheless, the Supreme Court denied Husband's motion, stating: "the brief in chief is due on May 23, 2014."
This appeal was subsequently assigned to this Court in September 2014. Because Husband's motion to reconsider/modify remained pending, and because, inter alia, at least a portion of the parties' dispute could be resolved (and the appeal, or a portion of the appeal, rendered moot) upon the trial court finally addressing Husband's motion, we stayed this appeal (with the agreement of the parties) on October 1, 2015, pending final resolution of Husband's motion. See also Schepp v. Hess , 1989 OK 28, ¶ 9 n.18, 770 P.2d 34 ("If, at the time an appeal is brought from judgment ..., there is pending before the trial court a term-time plea for relief"-which, as discussed further below, constitutes the substance of Husband's post-judgment motion-"this court will stay appellate proceedings to await the [trial court's] disposition of the term-time motion," and "[i]f the latter is granted and no appeal follows from this ruling, the appeal from judgment may be dismissed as moot"; "if, on the other hand, the term-time quest for relief is either granted or denied and an appeal is brought from that decision, then the two appeals-one for review of the judgment and the other from the term-time ruling-will be consolidated for appellate disposition."); Southeastern, Inc. v. Doty , 1971 OK 17, ¶ 16, 481 P.2d 144 (Unless a new trial motion is filed within ten days of a judgment, "appeals must be filed in this court within 30 days from the date of the final order or judgment sought to be reviewed"; thus, it can be "anticipate [d] that appeals may be filed in this court from final orders issued before the trial court has exercised its jurisdiction under the provisions of Section 1031.1"-"[i]n such case this court will, absent substantial reasons, stay the appeal ... pending final disposition of the case in the trial court conducted under the authority of Section 1031.1, and until a second petition in error embracing the new matter is filed in the same case in this court.").
After the trial court addressed Husband's motion, we ordered supplemental briefing (at the request of the parties). This second round of briefing concluded in April of 2017.

Wife also sought "additional attorney fees for the hearing of this Motion as this Court deems appropriate."

Indeed, Husband states in his motion that, "pursuant to 12 O.S. § 1031.1," he "requests that [the trial court] reconsider and modify certain aspects of its property division award set forth in [the divorce decree]." See also McMillian v. Holcomb , 1995 OK 117, ¶ 7 n.3, 907 P.2d 1034 ("A 'motion to reconsider' does not exist in the nomenclature of Oklahoma's statutory pleading scheme. A 'motion to reconsider' may be judicially considered as a 12 O.S. § 651 motion for new trial or a term-time motion to vacate pursuant to 12 O.S. § 1031.1.") (citations omitted).

Husband does not make any mention in this section of his appellate brief of the appraisal he offered of the acreage, but instead focuses solely on the appraisal of the acreage offered by Wife. The appraisal presented by Husband at trial values the acreage at an even lower amount than the appraisal presented by Wife.

As stated by the trial court at the attorney fee hearing, Husband could "hardly tell the truth when it's just right in front of him"; the court continued by stating that Husband "has difficulty telling the truth. And that's been the most laborious part of this trial is just constantly swimming upstream to get to the truth when the truth ought to just flow with ease. And-and he's had every opportunity."

A division of one portion of the marital property may appear unfair in isolation-e.g., the award to Husband of the parties' entire 25% ownership interest in the business, or of the parties' entire IRA, or of 33 of the 35 acres of marital property, including the marital residence, all appear, when viewed in isolation, to be unfair to Wife. Obviously, the relevant question on appeal is, instead, whether the division is fair and reasonable when viewed in the context of the total distribution.

Husband makes a final argument regarding the two acres: "that it is physically impossible to provide [Wife] with the two acres awarded by the trial court by virtue of the fact that the dimensions ordered by the trial court placed much of what Wife would own outside the property owned by the parties." There are at least two problems with Husband's argument. First, Husband appears to lack standing to even make this argument because, if true, Husband would only be benefitted, and not injured, by such an award to Wife. Second, Husband cites to the transcript to support his articulation of what the trial court ordered. However, in the divorce decree, the trial court simply stated that Wife was awarded two acres "to include the area covered by the cellular phone tower lease," and it ordered that Wife "shall be responsible for the cost of the survey, plat, and subdivision necessary to effectuate this transfer." This award is not "physically impossible," nor is the intent of the award ambiguous.

As stated above, the trial court did award Husband "[a]ll right, title and interest in the proceeds from the cellular phone tower lease" from August 14, 2009, until April 25, 2013, and awarded all right, title and interest in the proceeds from the cell phone tower lease to Wife thereafter.

"If the record is sufficient, this court will-in an appeal from an equity-suit decision-render that decree which the chancellor should have entered." Larman v. Larman , 1999 OK 83, ¶ 18, 991 P.2d 536 (footnote omitted).

We address Husband's contention, further below, that Wife was actually awarded a majority of the marital estate. Husband's contention, which we address is section VI of the Analysis, is based on his assertion that the cell phone tower lease "was worth $275,000"-an assertion that contradicts Husband's position at trial and which is based entirely on an alleged offer made to Wife some twenty-two months after the divorce decree was filed.

At this juncture we address Husband's complaint regarding a similar sum of money. In the decree the trial court ordered Husband to pay Wife $5,000 "for reimbursement of the value of Wife's vehicle Husband traded in for a vehicle owned by [the business for which he works] in the amount of $5,000, which the Court finds Husband improperly converted to his own use." As to this vehicle, the evidence was disputed at trial, and the trial court-not this Court on appeal-"is confronted with the parties themselves and the witnesses. It is better able to determine a controverted issue of fact than is this court, which, of necessity, is permitted only to consider the dry, printed words appearing in the record." Perry v. Perry , 1965 OK 160, ¶ 5, 408 P.2d 285. "The trial court is better able to determine controversial evidence by its observation of the parties, the witnesses, and their demeanor." Foshee v. Foshee , 2010 OK 85, ¶ 20 n.13, 247 P.3d 1162 (citations omitted). As explained by the trial court from the bench, Husband "traded in [Wife's car] for an asset that enure[d] to the benefit of [the business][.]" The court further stated: "I think it was dirty pool to take her vehicle away under the facts and circumstances that were presented to this Court and I'm ordering him to pay her an additional $5,000 as a form of equitable disgorgement of his interest that has enure [d] to the corporation ...." Husband even admits he "obtained" this vehicle from Wife at the beginning of the case, but asserts he "thought it wise to restore possession of the [vehicle] to [his business]." We conclude the trial court did not abuse its discretion in this regard.

We note that the decree (and Wife's Exhibit 3) set forth the amount as $8,941, but Husband in his argument sets forth the value as $8,194. However, Husband does not appear to be asserting the trial court made a scrivener's error or otherwise set forth the wrong amount.

Br.-in-chief at 12.

Although the trial court is not limited to statutory grounds, we note that the evidence produced by Husband does not even constitute "newly-discovered evidence," which must be "in existence," though "hidden [,] at the time of the judgment"; thus, for example, "the results of new physical examinations are not such evidence." Ryan v. U.S. Lines Co. , 303 F.2d 430, 434 (2d Cir. 1962). Here, the proposed evidence (i.e., the offer letter sent to Wife twenty-two months after the decree was filed) was not in existence at the time of trial or, indeed, at the time of the decree or within even a year of the decree being filed. Such evidence-evidence not in existence vis-à -vis the trial and decree-does not constitute sufficient cause to exercise term-time authority to modify a divorce decree, though it may, for example, be the basis of a post-decree motion to modify support obligations.

Other grounds set forth in Husband's motion to reconsider/modify are addressed in other sections of this Opinion because they were merely repeated in that motion and/or because it is more convenient for this Court to address them separately.

July 24, 2015 Tr. at 110.